# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CLAYTON KEARNEY,

    Plaintiff,

-vs-                                                Case No. 8:06-cv-595-T-24TGW

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's motion for judgment on the pleadings (*see* Docs. 139, 237) as to Count IV under Florida's bad faith statute. (Doc. 390.) Plaintiff opposes the motion. (Doc. 401.) Defendant has also filed a notice of supplemental authority in its own support. (Doc. 403.)

## BACKGROUND

Plaintiff Clayton Kearney suffered severe injuries in a July 27, 2002 auto accident in which he was a passenger in a car driven by an uninsured motorist. At the time of the accident, Plaintiff was covered by a business auto insurance policy issued by Zurich Insurance Company ("Zurich"), which had primary limits of $500,000 per occurrence, and which contained an express stacking provision in case of an accident with an uninsured motorist. Plaintiff was also covered by an uninsured motorist policy issued by Defendant with a $30,000 limit and an umbrella policy issued by Defendant with a $5 million limit. The umbrella policy Defendant issued listed the Zurich policy as the primary policy and stated "[i]f other insurance covering a loss also covered by this policy is available to the insured, the insurance afforded by this policy shall be excess of such other

insurance."

After the accident, Plaintiff filed a claim through his insurance agent with Zurich and with Defendant for the damages sustained. Zurich eventually paid Plaintiff its $500,000 policy limit and settled a bad faith claim for an additional sealed amount. When Defendant did not pay Plaintiff under the policies issued by Defendant, Plaintiff brought this suit alleging breach of contract and bad faith. The case was removed to federal court on April 7, 2006.

During the litigation, Defendant filed a motion in which it asked the Court to find that the stacking provision in the Zurich policy was valid. Had the stacking provision in the Zurich policy been valid, Plaintiff may have been eligible to collect up to $72.5 million[1] in damages under the Zurich policy—leaving Defendant with little, or no, liability under its umbrella policy. However, Court eventually ruled that, given its context, the express stacking provision of the Zurich contract was a mutual mistake by the parties to the contract and construed the Zurich policy to have a $500,000 limit. (Docs. 118, 143.)

Shortly after the Court adopted the Magistrate Judge's Report and Recommendation on, among other things, the policy limit under Plaintiff's Zurich policy, Defendant paid the limits of its primary policy and paid its $5 million policy limit under its umbrella policy. (*See* Doc. 143; Doc. 237, p. 2; Doc. 390, p. 12.)

The case was then bifurcated for trial: the first issues to be tried were (1) the liability of the uninsured motorist and the Plaintiff, and (2) the actual damages incurred by Plaintiff as a result of the accident. After a jury decided liability and damages in the first phase of litigation, the parties

---

[1] The parties reached the $72.5-million coverage estimate of the Zurich policy by multiplying the $500,000 per occurrence limit of the Zurich policy by the 145 company vehicles covered by the policy.

would then litigate, if necessary, whether there was bad faith on the part of Defendant in responding to Plaintiff's claim.

The liability phase of the case was tried to a jury in November of 2007. The uninsured motorist was found to be eighty percent at fault for Plaintiff's injuries, and Plaintiff—who had not been wearing a seatbelt at the time of the accident—to be twenty percent at fault. (Doc. 262, p. 1.) The jury found that Plaintiff had sustained $35,000,000 in future damages for lost earning ability and $25,000,000 in damages for past pain and suffering. (*Id.*, p. 2.) Plaintiff's past pain and suffering award was later reduced to $2,500,000 by the Court's remittitur. (Doc. 311.) The adjusted sum of Plaintiff's damages, therefore, was $37,500,000. Subtracting twenty percent, to account for Plaintiff's personal fault allocation, the total damages after the Court's remittitur equaled $30,000,000.

Defendant now moves for a judgment on the pleadings on the grounds that there can be no bad faith as a matter of law, arguing that Defendant was legally entitled to withhold full payment of Plaintiff's claim until the following issues were resolved: 1) the amount of the underlying insurance coverage under the Zurick policy (the stacking issue), 2) the amount of plaintiff's damages and whether they exceeded the underlying insurance coverage, and 3) whether the additional settlement amount by Zurick would be deemed underlying insurance. Plaintiff counters that his pleadings allege Defendant failed in its duty to investigate Plaintiff's claim honestly and fairly or make any attempt to achieve a prompt resolution prior to litigation, and thus, the claim of bad faith should survive a Rule 12(c) motion.

## STANDARD OF REVIEW

"Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts

3

in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (internal citations omitted). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Id.* The Court must "accept the facts in the complaint as true and . . . view them in the light most favorable to the nonmoving party." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

## DISCUSSION

Florida Statutes § 624.155(1)(b)(1) provides a cause of action to an insured when an insurer fails "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests."

A bad faith claim is premature until there has been a determination of liability and damages. *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). However, "[w]hen liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). Good faith requires "diligence and care in the investigation and evaluation of a claim. *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). Accordingly, "[b]ad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause." *Powell*, 584 So. 2d at 14. "[B]ad faith is ordinarily a question for the jury." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 681 (Fla. 2004).

Defendant states that it had no obligation to pay Plaintiff's claim until it determined whether Plaintiff had any damages exceeding the amount of "other insurance" owed to Plaintiff. To resolve that question, three issues had to be decided: (1) whether the Zurich policy, to which Defendant's

4

policy was supplemental, was unstacked, resulting in a $500,000 limit, or stacked, resulting in an approximate $72.5 million limit; (2) the total amount of damages owed to Plaintiff (as determined by the total damages less the percentage by which Plaintiff was at fault); and 3) whether the additional settlement paid by Zurich to settle a bad faith claim (*see* Docs. 36, 45) would also constitute "other insurance" by which Defendant could reduce its payment. The first issue was decided by this Court in an order finding that the "stacking" language contained in the Zurich policy was invalid, because it was the result of mutual mistake by the parties to the contract. (Docs. 118, 143). The second issue was resolved through the jury verdict, reduced via an accepted remittitur, which deemed the amount of Plaintiff's damages caused by others to be $30 million. The third issue has yet to be decided. Shortly after the first issue was resolved, Defendant paid Plaintiff its $5 million policy limit.

Notwithstanding the legitimacy of the need to resolve the questions posed by Defendant prior to the determination of the amount of Defendant's liability on Plaintiff's insurance claim, Defendant's argument does not reach the issue of whether Plaintiff's bad faith claim is sufficiently plead. Rather, Plaintiff's bad faith claim focuses on the manner with which Defendant pursued the resolution of the issues prior to the suit. Plaintiff claims that Defendant failed to investigate and attempt to settle the claim promptly and in good faith, making no offer to and refusing to communicate with Plaintiff, thereby forcing Plaintiff to initiate litigation to resolve the extent of Defendant's liability on the insurance claim. Because the law requires diligent investigation into an insured's claims, Plaintiff's pled allegations are sufficient to allow his claim of bad faith to survive a Rule 12(c) motion to dismiss.

## **CONCLUSION**

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion for Judgment on the Pleadings (Doc. 390) is **DENIED**.

DONE AND ORDERED this 18th day of October, 2009.

Copies to: Counsel of Record

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge