UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAYTON KEARNEY,

    Plaintiff,

v.

                      Case No. 8:06-cv-595-T-24-TGW

AUTO-OWNERS INSURANCE
COMPANY,

    Defendant.
_____/

## MOTION TO EXCLUDE EXPERT TESTIMONY

Defendant Auto-Owners Insurance Company ("Auto-Owners") moves the Court to exclude testimony by Plaintiff Clayton Kearney's ("Plaintiff" or "Kearney") proposed expert witnesses on the following grounds:

### I.

### INTRODUCTION

Kearney proposes to offer expert testimony from six witnesses. All of these witnesses would testify that Auto-Owners acted in bad faith under Florida law in its handling and settlement of Kearney's claim. The proposed testimony is inadmissible under Federal Rule of Evidence 702, which does not permit the introduction of expert testimony in the form of legal conclusions. In addition, as shown below, many of the subjects on which Kearney's proposed experts would testify are either irrelevant to any triable issue, or do not involve a subject that is so complex as to necessitate opinion testimony. Accordingly none of Plaintiff's proposed expert witnesses should be permitted to testify at the trial of this case.

## II.

## ARGUMENT

### A.  No Expert Testimony is Needed in the Trial of this Case.

The jury will not need to hear expert testimony to decide whether or not the facts in this case show that Auto-Owners acted in bad faith in not paying the policy limits on Kearney's claim before there was reason to believe that Auto-Owners owed Kearney the proceeds from the Umbrella Policy.  Rule 702 of the Federal Rules of Evidence provides the basic framework for determining the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  This is not a case that involves complex issues of fact unique to the insurance industry.  The jury issue is whether Auto-Owners had a legal duty to pay Kearney's claim sooner, or whether it was entitled to wait until important questions were resolved about the the amount of underlying insurance coverage, and about the amount of plaintiff's compensatory damages -- whether they were fully satisfied by the payment from plaintiff's underlying insurer, as attorney Mike Rywant questioned..  The factual questions surrounding those issues do not require special knowledge of insurance industry practices or claims adjustment and settlement procedures.[1]  Since no specialized knowledge is required, no expert witnesses are needed to assist the trier of fact in deciding those issues.

---

[1] One major exception is the role and relationship of an attorney and his client as made relevant by Auto-Owners assertion of the "advice of counsel" defense, and which is the subject of proposed expert testimony by Charles Wells, who will testify about the scope of professional undertaking by an attorney in Mike Rywant's role, and whether it is reasonable for him to advise

None of the motions for summary judgment submitted in this case relied upon expert testimony, in spite of the fact that all the proposed expert witnesses' depositions had been taken when the parties filed those motions. The Court did not need to hear expert testimony to decide the issues before it on summary judgment, and the jury will not need to hear expert testimony to decide whether Auto-Owners acted in bad faith in paying Kearney's claim.

**B.      Plaintiff's Experts Must Satisfy Federal Rule of Evidence 702 and *Daubert's* Requirements of Reliability, Relevance, and Helpfulness.**

In applying Rule 702 courts "must conduct a rigorous three-part inquiry, considering whether 1) the expert is qualified to testify competently regarding the matters he intends to address; 2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and 3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Cook v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). The proponent of expert testimony thus "carries a substantial burden under Rule 702." *Id.*

The Court acts as a gatekeeper where expert witnesses are concerned. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). As the Fifth Circuit recently observed, a threshold requirement of the court's gatekeeper role with respect to expert witnesses is to ensure that the background of the proffered witness reflects the specialized expertise needed for the particular opinions to be given, rather than simply a general academic qualification or job description: "[i]t is true that asbestos, heart valves, and cupcakes can all be broken down into their basic atomic particles; but that does not mean an atomic physicist is qualified to testify

---

a client on the issues which are the subject of this case, and whether the insurance company acted reasonably in following his advice on how to resolve the subject claim.

regarding asbestos, medical malpractice, or confectionary issue." *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 226 (5th Cir. 2007). Thus, under Rule 702, the first step in the trial court's gatekeeping function is to ensure that the witness has the credentials to support a finding that he or she has specialized knowledge that will enable the expert to provide helpful conclusions on the issues to be addressed.

Although an expert's methodology in the non-scientific context may be determined by common sense, logic, and practices common to or accepted in the area of expertise in question, it must still be based on something more than solely the experience of the purported expert. *See Kumho Tire Co. v. Carmichael*, 527 U.S. 137 (1999); *Haney v. Eaton Elec., Inc.*, 528 F. Supp. 2d 1262, 1267 (N.D. Ala. 2007) (*citing Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002); *Safeway, Inc. v. Sugarloaf P'ship, LLC*, 423 F. Supp. 2d 531 (D. Md. 2006) (granting motion to strike expert testimony where foundation of the opinion regarding effect of continuous operations clauses in a contract was not based in scientific, technical or other specialized knowledge but involved only legal knowledge drawn from expert's experience as a real estate attorney).

For expert testimony to be sufficiently helpful to a trier of fact to be admissible, it must "concern[] matters that are beyond the understanding of the average lay person. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Cook*, 402 F.3d at 1111 (quoting *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004)). "The party offering the expert must present the witness' proposed testimony in a form that persuades the trial court that the testimony will in fact assist the trier of fact. As we have held previously, carrying this burden requires

more than 'the *ipse dixit* of the expert.'" *Id.* (quoting *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998)).

### C. The Court Must Act As A Gatekeeper To Preclude Expert Testimony That Consists of Legal Conclusions.

Under the plain terms of Rule 702, all expert witnesses must be "qualified," must base their testimony on "knowledge," and must offer testimony that "will assist the trier of fact." FED. R. EVID. 702. In *Daubert*, the Supreme Court shed further light on the language of Rule 702, explaining that the Court's "gatekeeping responsibility" under the rule includes ensuring that "any and all" scientific testimony or evidence is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999). The "gatekeeper" role does not vary depending on the nature of expert testimony. The duty to ensure that an expert is properly qualified and that expert testimony is both reliable and relevant applies with equal force to every kind of expert witness. Expert testimony should not be admitted when it is unreliable and will not constitute the type of specialized expertise that will assist the trier of fact. *See, e.g., Sundance, Inc. v. Demonte Fabricating, Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008) ("The court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized, and which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions").

An expert witness may not offer legal conclusions or give opinion testimony on questions of law and that any such opinions should be excluded from evidence. *See, e.g., Cook v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) (stating "testifying experts may not offer legal conclusions"); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1997) (stating "courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law"); *Montgomery*

v. *Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (holding that legal conclusion regarding insurance company's duties was inadmissible as expert testimony); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059-1060 (9th Cir. 2008) (finding it was proper to exclude purported expert's legal conclusions regarding the parties' legal rights, duties and obligations under the law, even if those statements of law had been correct: "[r]esolving doubtful questions of law is the distinct and exclusive province of the trial judge."); *RLJCS Enter. v. Prof. Benefit Trust Multiple Employer Welfare Benefit Plan and Trust*, 487 F.2d 494, 498 (7th Cir. 2007) (excluding expert reports because "they conveyed legal rather than 'expert' opinions"); *Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) (refusing to admit expert reports that contained mere legal conclusions).

A legal conclusion that an insurer acted in bad faith in processing a claim is not admissible expert testimony. *See Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1105 (D. Ariz. 2003); *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 422-23 (W.D. Pa. 2006); *Knoell v. Metropolitan Life Ins. Co.*, 163 F. Supp. 2d 1072, 1078 n.8 (D. Ariz. 2002). The interpretation of an insurance policy is also not a proper subject for expert testimony, as it is the province of the court to interpret contracts. *See Brooks v. J.C. Penney Life Ins. Co.*, 231 F. Supp. 2d 1136, 1141 n.5 (N.D. Ala. 2002).

### D. Each of Plaintiff's Expert Witnesses Should be Barred from Testifying at Trial.

#### 1. Dennis Larry, Joseph Petitta, and Peter Knowe

Each of these three proposed expert witnesses would offer testimony on the ultimate issue of whether Auto-Owners acted in "bad faith" under the applicable cases and statutes found under Florida law. Their proposed testimony consists of legal conclusions that are not admissible as expert testimony under Rule 702.

Dennis Larry is an attorney who has no insurance background except as a lawyer in private practice who has represented parties in insurance cases. His training and experience as a civil trial attorney do not qualify him as an expert on insurance claims handling procedures. Mr. Larry does not have the requisite specialized knowledge to render opinions regarding the claims handling procedures Auto-Owners employs. He is therefore not qualified to testify as an expert witness under Rule 702.

Mr. Larry purports to give an opinion that Auto-Owners acted in bad faith because it (i) lacked proper procedures for claims investigation, (ii) failed to conduct a reasonable investigation with respect to Kearney's claim, and (iii) failed to provide Kearney with a sufficient explanation for the denial of coverage under the Umbrella Policy.

Joseph Petitta has a background in insurance claims handling. Petitta states that he spent 27 years working for insurers (Aetna and Travelers) and 12 years as an expert witness on insurance issues. He fails to show why he would have greater specialized knowledge of insurance claims handling procedures than anyone else who worked for insurance companies, including the employees of Auto-Owners. Simply proffering an expert with insurance credentials does not satisfy the minimum requirements of Rule 702 for whatever opinion Petitta might give concerning the matters at issue in this case. Rather, the party seeking to introduce expert testimony has the burden of showing that the expert has relevant specialized knowledge that the jury lacks and has so applied that specialized knowledge to the issues at hand that his testimony will be reliable, relevant, and helpful to the jury.

Mr. Petitta offers the following opinions:

- that Auto Owners failed to settle Clayton Kearney's claim in good faith;

- that Auto Owners failed to implement standards for the proper investigation of claims;

- that Auto-Owners denied Kearney's claim without conducting a reasonable investigation;

- that Auto Owners failed to promptly provide a reasonable explanation in writing to Kearney for denying his claim or of additional information needed to process his claim;

- that Auto Owners' defense based on the advice of counsel is not consistent with the facts of this case.

Mr. Knowe is a former insurance claims adjuster who has also worked as a consultant to insurance companies on claims handling matters and testified as an expert witnesses in insurance litigation. Like Petitta, Knowe does not show how his background qualifies him as an expert any more than the thousands of people who are employed in the insurance industry, including Auto-Owners' employees in this case. Like Petitta, he employs no analytical method to leap to the conclusion that Auto-Owners acted in bad faith in this matter. Instead, he relies upon his general background in the insurance industry to reach legal conclusions about Auto-Owners' settlement of Kearney's claim.

Knowe gives the following opinions:

- the amounts of coverage available to Kearney under the Zurich and Auto-Owners policies;

- that Kearney properly and timely reported his accident to Auto-Owners and cooperated with Auto-Owners;

- that Auto-Owners unfairly delayed its resolution and payment of Kearney's claim;

- opinions regarding, and interpreting, the Recreational Vehicle policy issued by Auto-Owners, which are not relevant to Kearney's claim regarding the Umbrella Policy in this action;

- that Auto-Owners' response to Kearney's Civil Remedy Notice of Violation was arbitrary and capricious;

- that Auto-Owners unreasonably delayed payment of proceeds on the Recreational Vehicle policy, which, in addition to being a legal conclusion, is not relevant to any issue in the scheduled trial;

- that Auto-Owners acted in bad faith in its processing and payment of Kearney's claim under the Umbrella Policy;

- Auto-Owners' contractual relationship with its reinsurer; and

- that Auto-Owners' reliance on the advice of its counsel was inadequate or constitutes evidence of bad faith in the handling of Kearney's claim.

All of the foregoing opinions that Larry, Petitta, and Knowe propose to offer constitute legal conclusions, many of which concern irrelevant matters. They opine that Auto-Owners acted in bad faith in its handling and payment of the Umbrella Policy, they offer legal conclusions regarding the interpretation of the Umbrella Policy, and they propose to testify about irrelevant matters regarding the Recreational Vehicle Policy. The issue of whether Auto-Owners actions and decision making amounted to bad faith is in the exclusive province of the jury. It is for the jury alone to decide whether the facts in this case support a finding of bad faith on the part of Auto-Owners. The facts are not necessarily so complex that expert testimony is needed to assist the jury. The proposed testimony would invade the province of the jury by telling them

that the facts equal bad faith. It offers nothing more than what counsel for Plaintiff could argue in closing argument.

The opinions of Larry, Petitta, and Knowe all cover essentially the same ground, so even if they were properly qualified to give expert testimony and their testimony were admissible under Rule 702 their testimony is redundant and thus at least two of them should be excluded under Rule 403 because their testimony would constitute the "needless presentation of cumulative evidence." The Eleventh Circuit has affirmed district court decisions excluding expert testimony on grounds that such testimony was unnecessarily cumulative. *See Tran v. Toyota Motor Co.*, 420 F.3d 1310, 1315 (11th Cir. 2005) (in product liability/personal injury action, district court, after allowing testimony by plaintiff's personal physician and by a second expert offering a "macro perspective" on plaintiff's injury, did not abuse discretion in excluding testimony by a third expert who wanted to offer a "micro perspective" on plaintiff's injury).

2. Alex Cheng

Alex Cheng is an information technology ("IT") specialist. He has been asked by Kearney to give opinions of (i) Auto-Owners' "Backup and Restore" procedures; (ii) its "Policy sales and Management Systems"; (iii) its "Claims Reporting Systems; (iv) its "Claims Processing Systems; and (v) its "Agent Compensation Systems." As to items (ii), (iii), and (v), his report states that he has not been provided sufficient information to form opinions on these matters, so in actuality, his opinions are limited to evaluations of Auto-Owners' "Backup and Restore" procedures and its "Claims Processing Systems."

However, Kearney has not alleged (and has no evidence that) Auto-Owners' alleged "bad faith" denial/delay in paying Kearney its $5 million policy limits had anything to do with its IT systems. Rather, as previously briefed extensively before this Court, Auto-Owners initially did not pay the policy limits on its excess policy because this policy contained an "Other Insurance"

provision stating that the Auto-Owners' coverage was in excess of "other insurance" -- and Kearney here was himself claiming to have "other insurance" providing up to $72.5 million in coverage (which was much higher than Kearney's own initial estimates of the dollar value of his injuries). In other words, Auto-Owners did not pay its $5 million policy limits initially because it was awaiting a judicial determination of the amount of coverage Kearney had under his underlying Zurich policy and to see whether this coverage would be exhausted. This had nothing to do with any alleged deficiencies in Auto-Owners' IT systems.

In other words, even assuming, *arguendo*, that Mr. Cheng is a properly qualified expert, his opinions about IT systems are irrelevant to any issue in the case. Mr. Cheng has nothing to offer here that might assist the trier of fact. As such, his testimony is not only inadmissible as expert testimony under Rule 702, but the Court should also preclude him from testifying under Rules 402 (irrelevant evidence is inadmissible) and 403 (the Court may exclude even "relevant" evidence due to "waste of time"). Mr. Cheng's testimony here would truly be a "waste of time," because he has nothing to offer that has any relevance to the issues before the Court.

Moreover, to the degree Mr. Cheng seeks testify that Auto-Owners' (allegedly deficient) IT systems meant that Auto-Owners' claims handling procedures did not meet the requirements of Florida statutes, these would be inadmissible legal conclusions that Mr. Cheng is unqualified to make. As discussed above, expert testimony is not supposed to usurp this Court's role in reaching legal conclusions. Moreover, Mr. Cheng's background is in IT, not the insurance industry. He has no qualifications to say what IT systems and procedures need to be in place to comply with Florida's insurance statutes.

### 3. Daniel Spragg

Daniel Spragg is an attorney with an insurance underwriting background who serves as a managing director of a risk management company. He offers an opinion that Auto-Owners has

sound finances and indeed is "one of the largest and most financially sound property and casualty insurance companies" in the country.

Spragg's proposed testimony is irrelevant, and he has nothing to offer that might assist the trier of fact. At issue is why Auto-Owners did not pay Kearney its $5 million policy limits on its excess policy until 2007, and this decision had nothing to do with Auto-Owners' finances. Rather, this decision had everything to do with the fact that Kearney claimed to have coverage under "other insurance" that would more than compensate him for his injuries, thereby meaning that Auto-Owners' excess policy would never be triggered.

To the degree that Kearney wishes to employ Mr. Spragg's testimony about Auto-Owners' finances to assist the trier-of-fact in determining an amount of punitive damages, this too would be irrelevant because, as set forth in Auto-Owners' motion in limine, Kearney has no evidence supporting his entitlement to punitive damages. Spragg's testimony would only go to the magnitude of a potential award of punitive damages, and thus cannot assist Kearney at all in proving entitlement to such damages.

## 4. William Hahn

William Hahn would give opinions regarding Kearney's injuries and damages. The Court has already conducted a trial on Kearney's damages, and the jury in that trial awarded Kearney damages, which were subsequently remitted pursuant to the Court's order. Kearney's injuries and damages are therefore not relevant to any issue to be considered by the jury in the trial scheduled on Auto-Owners' liability in this case, and Hahn's proposed testimony will not be helpful to the trier of fact.

In particular, Hahn's proposed testimony regarding his opinion as to the value of Kearney's case is irrelevant as he was not involved in the negotiations between Auto-Owners

and Kearney's counsel, whose valuations are the ones to consider as to the relevance of Auto-Owners' actions. Mr. Hahn's after-the-fact analysis has no bearing on any issue before the jury.

Even if Hahn's testimony were relevant, he is not qualified to give the opinions he proposes to give. He proposes to offer opinions about Kearney's mental capacity before and after the July 27, 2002, accident in which Kearney was injured, but Hahn has no training in medicine, psychiatry, or any other field that would qualify him to opine about Kearney's injuries and their effect on his mental capacity. Since he is not qualified to testify regarding Kearney's mental capacity, he is not qualified to testify regarding the effect Kearney's injuries have on his earning capacity either. By training and experience, Hahn is an attorney, and there is no evidence that he has any training or experience that would qualify him as an expert in the matters about which he proposes to testify. For the foregoing reasons, Hahn should not be permitted to testify in the scheduled trial.

### III.
### CONCLUSION

Auto-Owners requests that the Court exclude the proposed testimony of all of Plaintiff's proposed expert witnesses.

Respectfully submitted,

*/s/ Forrest S. Latta*
Forrest S. Latta (admitted pro hac vice, AL Bar # LAT008)
S. Greg Burge (admitted pro hac vice, FL Bar # 0743770)
Elizabeth J. Anderson (FL Bar # 0626351)

*/s/ Hank B. Campbell*
Hank B. Campbell (FL Bar # 434515)
William S. Chambers, IV (FL Bar # 29793)

Attorneys for Defendant
AUTO-OWNERS INSURANCE COMPANY

**OF COUNSEL:**
Forrest S. Latta
BURR & FORMAN LLP
P.O. Box 16046
Mobile, Alabama  36616
Telephone: (251) 344-5151
Facsimile: (251) 344-9696

S. Greg Burge
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

Elizabeth J. Anderson
BURR & FORMAN LLP
369 N. New York Avenue
Third Floor
Winter Park, Florida  32789
Telephone: (407) 647-4455
Facsimile: (407) 740-7063

Hank B. Campbell, Esq.
William S. Chambers, IV, Esq.
VALENTI, CAMPBELL, TROHN, TAMAYO & ARANDA, PA
1701 South Florida Avenue
Lakeland, Florida  33803
Telephone: (863) 686-0043
Facsimile: (863) 616-1445

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

| | |
|---|---|
| Dale M. Swope, Esq. | Bennie Lazzara , Jr., Esq. |
| Lisha D. Bowen, Esq. | James Robert Freeman, Esq. |
| SWOPE RODANTE, PA | WILKES & MCHUGH, PA |
| 1234 E. 5th Avenue | 1 N Dale Mabry Hwy, Suite 800 |
| Tampa, Florida  33605 | Tampa , FL 33609 |

*/s/ Forrest S. Latta*
OF COUNSEL