UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAYTON KEARNEY,

        Plaintiff,

v.                                    Case No.  8:06-cv-595-T-24TGW

AUTO-OWNERS INSURANCE COMPANY,

        Defendant.
_____/

**O R D E R**

This cause comes before the Court on the parties' motions in limine and responses thereto.  Accordingly, the Court will address each motion.

**I.  Background**

The Court will not restate the extensive background of this case.  Currently, Kearney's claim for bad faith handling of his umbrella policy claim remains before this Court, and this case is set for trial on November 9, 2009.  Both parties have filed motions in limine, which the Court addresses below.

**II.  Kearney's Motions in Limine**

Kearney filed seven motions in limine.  The Court will address each motion in turn.

**A.  Kearney's DUI and Arrest**

In his first motion in limine, Kearney moves to exclude all evidence relating to his arrest for driving under the influence of alcohol on April 29, 2007.  (Doc. No. 519).  Kearney argues that such evidence is irrelevant to the issues in this case–whether Auto-Owners committed bad faith in the handling of his claim regarding the July 2002 car accident.

Auto-Owners opposes the motion, arguing that such information is relevant to the issue of why Auto-Owners believed that the Zurich settlement fully satisfied all of Kearney's damages. (Doc. No. 541). For example, Auto-Owners contends that such evidence is relevant to show that Kearney had recovered enough to attend social activities and to drive a motor vehicle.

The Court rejects Auto-Owners' arguments. The fact that Kearney had recovered enough to attend social activities and drive can be proven by other evidence. The Court finds that the probative value of the evidence relating to his arrest for driving under the influence is substantially outweighed by its unfairly prejudicial effect. Accordingly, the Court grants Kearney's motion on this issue.

**B.  Referring to Charles Wells as "Justice Wells"**

Next, Kearney moves to prohibit Auto-Owners from referring to Auto-Owners' expert, Charles T. Wells, Esq., former Justice of the Florida Supreme Court, as "Justice Wells" during voir dire, opening statements, direct examination, and closing arguments (i.e., at any time in front of the jury). (Doc. No. 520). Kearney argues that referring to him as "Justice Wells" would unfairly bolster his credibility.

Auto-Owners does not oppose this motion, as long as it can elicit from Wells, during his direct examination, the fact that he is a former Florida Supreme Court Justice, because such information goes to his qualifications and experience. (Doc. No. 541). Accordingly, the Court grants Kearney's motion on this issue, but notes that Auto-Owners may elicit from Wells the fact that he is a former Florida Supreme Court Justice when inquiring into his background, qualifications, and experience.

**C.  Damages, Kearney Construction's Bankruptcy, and Comparative Negligence**

Next, Kearney moves for three things: (1) an order prohibiting Auto-Owners from attempting to re-litigate the issue of damages; (2) an order prohibiting Auto-Owners from referring to, in any way, the fact that Kearney Construction Company (or any of its related companies) has filed for bankruptcy; and (3) a ruling from this Court that the Court's prior determination of the amount of Kearney's damages for loss of future earnings and past non-economic damages, as well as the jury's determination of Kearney's comparative negligence due to his failure to wear a seatbelt, is admissible evidence.  (Doc. No. 521).

In its response to the motion in limine, Auto-Owners only specifically sets forth its opposition to the extent that Kearney seeks to prohibit the introduction of any evidence that Kearney Construction Company has filed for bankruptcy.  (Doc. No. 541).  However, Auto-Owners separately filed a motion in limine in which it argued that Kearney be prevented from introducing evidence regarding the amount of damages awarded by the jury.

Auto-Owners has not responded to the portions of the motion in limine in which Kearney requests (1) an order prohibiting Auto-Owners from attempting to re-litigate the issue of damages, or (2) a ruling from this Court that the jury's determination of Kearney's comparative negligence due to his failure to wear a seatbelt is admissible evidence, and as such, the Court deems those portions of the motion to be unopposed.  Accordingly, the motion is granted to the extent of those portions.

With regards to the issue of damages, the Court agrees that the Court's prior determination of the amount of Kearney's damages for loss of future earnings and past non-economic damages is relevant to the issues in this case.  In order for the jury to determine

whether Auto-Owners' actions were reasonable, the jury will need to know the amount Kearney's damages, which have already been established and will not be re-litigated. Therefore, to the extent that Kearney seeks a ruling that the Court's prior determination of the amount of his damages is admissible, the motion is granted.

With regards to the issue of Kearney Construction Company's bankruptcy filing, Auto-Owners argues that such information is relevant to the issue of whether Auto-Owners acted reasonably when it initially rejected Kearney's claim based on a belief that he had been fully compensated by the Zurich settlement. More specifically, Auto-Owners argues that such evidence shows that Auto-Owners' doubts were reasonable regarding whether it should have accepted Kearney's claim that his future earnings would have been equivalent to his father's earnings had the accident not occurred. Thus, argues Auto-Owners, the fact that the company has filed for bankruptcy shows that Auto-Owners' doubts were reasonable regarding the amount of damages that Kearney claimed to have sustained for lost earning capacity, since the amount was simply a projection based on uncertain future events.

Upon consideration, the Court finds that the fact that Kearney Construction Company (or any of its related companies) has filed for bankruptcy should not be revealed to the jury, as it is an event that occurred after Auto-Owners paid Kearney's claim under the umbrella policy. Furthermore, there is no evidence that one of the reasons that Auto-Owners initially denied the claim was due to fear that the company was going to file for bankruptcy. Therefore, the Court finds that the probative value of such evidence is substantially outweighed by its potentially unfairly prejudicial effect. As such, to the extent that Kearney seeks to exclude evidence of the company's bankruptcy filing, the motion is granted. However, if Kearney's witnesses in some

manner or fashion opine as to the continued success of Kearney Construction Company or Bing

Kearney's income, evidence of the bankruptcy may become relevant and admissible.

### D. Motive and State of Mind

Next, Kearney moves to exclude opinion testimony regarding motives or state of mind.

(Doc. No. 522). Kearney anticipates that Auto-Owners will attempt to introduce expert

testimony regarding the motives of his counsel, and he argues that such should be prohibited

because it is not the proper subject of expert testimony and would amount to pure speculation.

Auto-Owners opposes the motion, arguing that the motives of Kearney's counsel can be

relevant to the bad faith claim. (Doc. No. 541). Specifically, Auto-Owners points out that the

motives of Kearney's counsel can be relevant to the issue of whether there was really a realistic

possibility of settlement. See Mendez v. Unitrin Direct Property & Casualty Ins. Co., 2007 WL

2696795, at *3-4 (M.D. Fla. Sept. 12, 2007)(quoting Barry v. Geico, 938 So. 2d 613, 618 (Fla.

4th DCA 2006)).

The Court agrees with Auto-Owners that such evidence is relevant and would not be pure

speculation, but the Court is unable to rule at this time as to whether the specific expert opinions

will be admissible. Instead, the Court prefers to wait until trial, and during the trial, Kearney can

make specific objections at the appropriate time. Accordingly, the Court denies this motion

without prejudice at this time.

### E. Judicial Determinations

Next, Kearney moves to prohibit any testimony or argument that an insurer has a per se

absolute right to a judicial determination of any issues prior to paying a claim. (Doc. No. 523).

Auto-Owners opposes the motion, although its response is not on point with the motion. (Doc.

No. 541).  Specifically, Auto-Owners rephrases the issue as Kearney seeking "a ruling that an

insurer does not have any right to seek judicial review."  (Doc. No. 541, p. 5).  However, that

argument was not made in Kearney's motion.

The issue set forth in Kearney's motion in limine has already been raised, briefed, and

ruled on in this Court's summary judgment orders.  Specifically, the Court found that: (1) the

law neither required Auto-Owners to litigate any issues, nor prohibited it from doing so, as long

as Auto-Owners acted in good faith at all times; and (2) an insurance company does not

immunize itself from a bad-faith claim merely because it raises a non-frivolous issue in court.

(Doc. No. 509, 510).  Thus, the Court has already found that there is no rule that an insurer has a

per se absolute right to a judicial determination of any issues prior to paying a claim.

Furthermore, Auto-Owners has not provided any law that states that such a rule exists.

Accordingly, Kearney's motion in limine is granted only to the extent that it asks the Court to

prohibit Auto-Owners from arguing that such a rule exists.

### F.  Segalla's Expert Opinion

Next, Kearney moves to exclude certain opinions of Thomas Segalla, Auto-Owners'

expert, arguing that such opinions are inadmissible because: (1) they are legal conclusions, (2)

they are based on an incorrect understanding of the law, and/or (3) they are irrelevant.

Specifically, Kearney moves to exclude the following opinions: (1) that Auto-Owners did not

violate Florida Statute § 624.155; (2) that an insurer does not have a duty to pay a claim until

there has been a determination of coverage and damages; (3) that Kearney's amended complaint

should be dismissed; (4) that Kearney's Civil Remedy Notice was premature; (5) that Auto-

Owners acted in good faith when it paid the $5 million policy limits; and (6) that Auto-Owners'

failure to pay the policy limits within sixty days after Kearney filed the Civil Remedy Notice was not bad faith and did not violate Florida Statute § 624.155. (Doc. No. 524). Auto-Owners did not specifically oppose this motion. (Doc. No. 541).

The Court agrees that the above opinions–except for the opinions that an insurer does not have a duty to pay a claim until there has been a determination of coverage and damages and that Kearney's Civil Remedy Notice was premature–are inadmissible legal conclusions that are not the proper subject of expert testimony. However, the opinion that Kearney's Civil Remedy Notice was premature is not an improper legal conclusion and is not irrelevant. With regards to the opinion that an insurer does not have a duty to pay a claim until there has been a determination of coverage and damages, Segalla may testify that an insurer does not have a duty to pay a claim until ***the insurance company has determined*** coverage and damages. Such is not an improper legal conclusion and is not irrelevant.[1] As such, the Court grants Kearney's motion, except to the extent that Kearney seeks to exclude the opinions that an insurer does not have a duty to pay a claim until the insurance company has determined coverage and damages and that Kearney's Civil Remedy Notice was premature.

### G. Wells' Expert Opinion

Next, Kearney moves to exclude the expert opinion testimony of Charles Wells. Wells intends to testify to the following seven opinions: (1) Auto-Owners processed and handled Kearney's claim for payment under the umbrella policy reasonably and appropriately under the

---

[1]The Court has already ruled that there is no rule that an insurer has a per se absolute right to a judicial determination of any issues prior to paying a claim, and as such, Segalla cannot testify that an insurer does not have a duty to pay a claim until ***a court has determined*** coverage and damages.

circumstances; (2) it was reasonable and appropriate for Auto-Owners to have in good faith relied upon the advice and counsel of Michael Rywant; (3) Auto- Owners acted fairly and honestly toward Kearney with due regard for his interests; (4) Auto-Owners did not violate Florida Statute § 624.155 in the handling of Kearney's claim; (5) Auto-Owners acted reasonably and appropriately in the hiring of Attorney Michael Rywant to represent and advise Auto-Owners upon the receipt of notice of the claim; (6) Michael Rywant performed the representation of Auto-Owners reasonably and appropriately under the circumstances of the claim; and Auto-Owners paid the limits of the umbrella policy when, under all the circumstances, it could and should have done so. Kearney argues that Wells should be excluded, because (1) Wells is not qualified to render some of the opinions; (2) some of the opinions are legal opinions, and (3) some of the opinions are irrelevant to the issues to be decided by the jury. (Doc. No. 525). Auto-Owners opposes the motion. (Doc. No. 541).

### 1.  Processing and Handling the Claim

Wells intends to testify that Auto-Owners processed and handled Kearney's claim for payment under the umbrella policy reasonably and appropriately under the circumstances. Kearney argues that Wells is not qualified to render such an opinion, because there is nothing in his experience or background that qualifies him as an expert regarding claims processing and handling. The Court agrees that Wells' background and experience does not qualify him as an expert regarding the insurance claims handling process. As such, the Court grants the motion to the extent that the Court finds that Wells cannot testify as to this conclusion.

### 2.  Rywant

Wells offers three opinions that relate to Rywant's representation of Auto-Owners: (1)

that Auto-Owners acted reasonably and appropriately in the hiring of Attorney Michael Rywant to represent and advise Auto-Owners upon the receipt of notice of the claim; (2) that Michael Rywant performed the representation of Auto-Owners reasonably and appropriately under the circumstances of the claim; and (3) that it was reasonable and appropriate for Auto-Owners to have in good faith relied upon the advice and counsel of Michael Rywant. Kearney argues that the first two opinions should be excluded, because they are not relevant to the issues in this case. This Court disagrees.

An insurance company's reliance on advice of counsel is a factor to be considered in bad faith cases. See Cotton States Mutual Ins. Co. v. Trevethan, 390 So. 2d 724, 728 (Fla. 5th DCA 1980). Therefore, Wells' opinions regarding the hiring of Rywant and Rywant's performance is relevant and admissible.

Kearney also argues that Wells' opinion that it was reasonable and appropriate for Auto-Owners to have in good faith relied upon the advice and counsel of Michael Rywant should be excluded because Wells is not qualified to render such an opinion. The Court, however, rejects Kearney's argument, because Wells is qualified to give an opinion in this area.

Additionally, Kearney argues that Wels' opinion regarding Auto-Owners' reliance is not helpful to the jury, because no one would dispute that it is reasonable and appropriate for an insurance company to act in good faith when handling a claim. However, argues Kearney, Wells is not able to testify to the real issue–whether Auto-Owners actually acted in good faith. The Court rejects this argument, as Wells can testify regarding the reasonableness of Rywant's advice and whether Auto-Owners' followed his advice–both of which goes to whether Auto-Owners actually, in good faith, relied on Rywant's advice.

9

Accordingly, the Court denies the motion to the extent that the Court finds that Wells may testify as to these three opinions.

### 3. Actions Towards Kearney

Wells also intends to testify that Auto-Owners acted fairly and honestly toward Kearney with due regard for his interests. Kearney argues that the opinion is an inadmissible legal conclusion, because Wells simply takes an excerpt from the language of the statute[2] and then tells the jury that Auto-Owners met the standard. The Court disagrees. While Wells' opinion overlaps the language of the statute, Wells is providing a factual conclusion–that Auto-Owners acted fairly and honestly, and that it acted after giving due regard to Kearney's interests–not a legal conclusion.

Kearney also argues that to the extent that the Court finds that the opinion is a factual, rather than legal, conclusion, then Kearney argues that Wells is not qualified to render such an opinion, because Wells is not an expert in insurance claims handling. The Court rejects this argument, as Wells' background and experience makes him qualified to opine regarding whether Auto-Owners acted fairly and honestly toward Kearney with due regard for his interests. As such, the Court denies the motion as to this opinion.

### 4. Violation of § 624.155

Wells also intends to testify that Auto-Owners did not violate Florida Statute § 624.155 in the handling of Kearney's claim. Kearney argues that this opinion is an inadmissible legal

_____

[2]Florida Statute § 624.155(1)(b)(1) provides that an insured can bring a civil action against an insurer for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests."

conclusion, because it merely tells the jury what its verdict should be. The Court agrees with Kearney, and therefore, the Court grants the motion to the extent that the Court finds that Wells cannot testify as to this conclusion.

### 5. Payment of the Policy Limits

Wells also intends to testify that Auto-Owners paid the limits of the umbrella policy when, under all the circumstances, it could and should have done so. Kearney argues that the opinion is an inadmissible legal conclusion, because Wells simply takes an excerpt from the language of the statute and then tells the jury that Auto-Owners met the standard. The Court disagrees. While Wells' opinion overlaps the language of the statute, Wells is providing a factual conclusion–that Auto-Owners paid the limits of the umbrella policy when, under all the circumstances, it could and should have done so–not a legal conclusion.

Kearney further argues that this opinion implies a legal conclusion–that Auto-Owners could not have or should not have paid its policy limits sooner. Again, the Court disagrees. The appropriate timing of the payment is a factual conclusion about which Wells may testify.

Kearney also argues that to the extent that the Court finds that the opinion is a factual, rather than legal, conclusion, then Wells is not qualified to render such an opinion, because Wells is not an expert in insurance claims handling. The Court rejects this argument, as Wells' background and experience makes him qualified to opine regarding whether the facts and circumstances were such that Auto-Owners should have paid the claim sooner. As such, the Court denies the motion as to this opinion.

### 6. Unfair Prejudice

Additionally, Kearney argues that Wells should be excluded from testifying because

there is a danger of unfair prejudice. Specifically, Kearney contends that the jury may unduly credit the weight of Wells' testimony simply because he is a former Florida Supreme Court Justice. The Court rejects this argument, and if necessary, an appropriate instruction can be given to the jury to prevent such a problem.

### III.  Auto-Owners' Motions in Limine

Auto-Owners also filed seven motions in limine. The Court will address each motion in turn.

#### A.  Kearney's Accident and Injuries

Auto-Owners moves to exclude evidence regarding the facts of Kearney's accident, the facts of his injuries, and the amount of damages that the jury awarded him. (Doc. No. 528). Auto-Owners argues that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and/or wasting judicial resources.

Kearney opposes the motion, arguing that such evidence is necessary to give the jury a full picture of what happened so that they can determine if Auto-Owners' actions were reasonable. (Doc. No. 548). The Court agrees that some evidence of the facts of the accident, the injuries that Kearney sustained, and the amount of Kearney's damages is relevant and is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and/or wasting judicial resources. However, by so ruling, the Court does not suggest that such evidence should be the focus of the trial and any such evidence should be brief. Accordingly, the Court denies Auto-Owners' motion on this issue.

## B.  Auto-Owners' Company-Wide Policies and Practices

Next, Auto-Owners moves to prohibit Kearney from introducing evidence of Auto-Owners' general policies, practices, and procedures, because the facts relating to Kearney's claim represent a unique and isolated situation.  (Doc. No. 529).  While Kearney does not oppose the motion to the extent that Auto-Owners seeks to exclude evidence of specific acts it committed in handling the claims of other insureds, Kearney does oppose the motion to the extent that Auto-Owners is attempting to prevent Kearney from offering evidence of certain company-wide business practices.  (Doc. No. 545).  Specifically, Kearney objects to Auto-Owners' attempt to prevent Kearney from offering evidence that shows that: (1) Auto-Owners never pays a claim under an excess UM policy without the insured first filing suit; (2) Auto-Owners has a general business practice of never paying a claim under an excess UM policy until the primary carrier has tendered payment of its policy limits to the insured; (3) Auto-Owners has failed to adopt and implement standards for properly investigating claims; and (4) Auto-Owners has a general business practice of storing data in an unorganized manner, which causes it not to consider all available claim information.

The Court agrees that the evidence specified above that Kearney wants to proffer may be relevant to his bad faith claim.  Furthermore, such policies, practices, and procedures are probative as long as Kearney shows that he was directly harmed by them (i.e., that the bad faith in handling his claim resulted, at least in part, from these policies, practices, and procedures).  See State Farm Mutual Ins. Co. v. Campbell, 538 U.S. 408, 422 (2003).  Therefore, to the extent that Auto-Owners is seeking to exclude evidence of its policies, practices, and procedures that harmed Kearney, the motion is denied.

### C.  Reading from Court Orders

Next, Auto-Owners moves to prohibit Kearney from reading prior Court orders to the jury or offering them into evidence.  (Doc. No. 530).  Kearney opposes the motion to the extent that Auto-Owners is attempting to prevent him from reading or introducing into evidence certain portions of the Magistrate Judge's July 18, 2007 Report and Recommendation[3] ("R&R") relating to the issue of whether the Zurich policy provided stacked coverage.  (Doc. No. 544).

Kearney argues that the Magistrate Judge's analysis in the R&R is relevant to his bad faith claim, because it shows that Auto-Owners' position on the stacking issue was not supported by the weight of legal authority and that Auto-Owners did not investigate the issue of mutual mistake.  In support of this argument, Kearney cites to <u>State Farm Mutual Auto Insurance Co. v. Laforet</u>, 658 So. 2d 55, 63 (Fla. 1995), in which the court stated that when analyzing the totality of the circumstances to determine whether an insurer acted in bad faith, the jury should consider, among other things, the weight of legal authority on the coverage issue and the insurer's diligence and thoroughness in investigating the facts pertinent to coverage.

The Court rejects Kearney's argument.  While Kearney may tell the jury that the Magistrate Judge concluded that the Zurich policy was not stacked and that the Magistrate Judge found that there was a mutual mistake by Kearney and Zurich that led to the policy being erroneously labeled as stacked, Kearney cannot read the R&R, or any portion of it, to the jury.  Other witnesses can testify regarding the stacking and mutual mistake issues, which will allow the jury to evaluate the strength of Auto-Owners' argument that the Zurich policy was stacked.  Accordingly, the Court grants Auto-Owners' motion on this issue.

---

[3]The Report and Recommendation is filed at Doc.  No. 118.

14

### D.  Sperandeo's Errata Sheet

Next, Auto-Owners moves to exclude evidence of Anthony Sperandeo's errata sheet. (Doc. No. 531).  Specifically, Auto-Owners anticipates that Kearney will attempt to introduce the errata sheet from Sperandeo's first deposition to show that Sperandeo did not indicate therein that he wanted to make two substantive changes to answers that he gave, despite the fact that in a second deposition, Sperandeo gave two substantively different answers.  Auto-Owners argues, however, that it is improper for a person to make substantive changes to their deposition testimony by using an errata sheet, and as such, the errata sheet should not be admissible to show that Sperandeo did not make such changes therein.

Kearney opposes the motion, arguing that the errata sheet is relevant to impeach Sperandeo's testimony.  (Doc. No.  539).  Kearney points out that there is no Eleventh Circuit case law that states that one cannot make substantive changes to their deposition testimony by using an errata sheet, and as such, the errata sheet should be admissible.

It is true that there is no clear authority either way regarding whether a person can make substantive changes to their deposition testimony by using an errata sheet, and if they can, under what circumstances.  See, e.g., Cultivos Yadran S.A. v. Rodriguez, 258 F.R.D. 530 (S.D. Fla. 2009); Chemfree Corp. v. J. Walter, Inc., 2008 WL 5234247 (N.D. Ga. Sept. 30, 2008); Purdee v. Pilot Travel Centers, L.L.C., 2007 WL 3143716 (S.D. Ga. Oct. 23, 2007).  Therefore, given that there is no clear authority requiring a person to make substantive changes to their deposition testimony by using an errata sheet, the Court finds that allowing Kearney to introduce such evidence would be unfair and could confuse the jury.  Accordingly, the Court finds that the Auto-Owners' motion on this issue should be granted.

**E.  Zurich's Premiums**

Next, Auto-Owners moves to exclude any reference or evidence relating to the amount of premiums charged by Zurich under its UM policy.  (Doc. No. 532).  Auto-Owners argues that Kearney may attempt to introduce such evidence to show that Auto-Owners should have known, based on the premium charged by Zurich, that the Zurich policy did not provide stacked coverage. Auto-Owners contends that such evidence should be excluded, because there is no evidence regarding what Zurich would have charged for stacked coverage, and as such, there is no foundation for the contention that Auto-Owners should have known, based on the premium charged by Zurich, that the Zurich policy did not provide stacked coverage.

Kearney opposes the motion, arguing that such evidence is relevant to the issue of whether Auto-Owners conducted a thorough investigation regarding the stacking issue.  (Doc. No. 547).  The Court agrees that such evidence is relevant, and as such, the Court denies Auto-Owners' motion on this issue.  However, at trial, to the extent that Auto-Owners' believes that certain testimony lacks foundation, Auto-Owners can make an objection at that time.

**F.  Recreational Vehicle Policy**

Next, Auto-Owners moves to prohibit Kearney from introducing evidence relating to the Recreational Vehicle policy ("RV policy") it issued.  (Doc. No. 533).  Auto-Owners argues that such evidence is irrelevant because it pertains to a separate policy, and even if it were relevant, its probative value would be substantially outweighed by the danger of unfair prejudice and would waste judicial resources.

Kearney opposes the motion, arguing that it would be impossible to completely exclude evidence of the existence of such policy, because the policy was implicated in this case and had

to be exhausted before the umbrella policy at issue was triggered. (Doc. No. 546). The Court agrees that the existence of this policy should be revealed to the jury.

Kearney, however, takes it a step farther and argues that Auto-Owners' handling of the RV claim is relevant to show Auto-Owners' bad faith towards Kearney. Kearney then explains Auto-Owners' actions with respect to the RV claim. While such evidence may be relevant to show that Auto-Owners acted in bad faith when handling the RV claim, Kearney has dismissed his bad faith claim to the extent that it was based on Auto-Owners' handling of the RV claim. Therefore, the Court finds that the introduction of evidence relating to Auto-Owners' handling of the RV claim (which is based on a separate policy than the umbrella policy at issue during trial), would be unfairly prejudicial and must be excluded.

Accordingly, the Court grants in part and denies in part Auto-Owners' motion to exclude evidence of the RV policy. The motion is denied to the extent that Kearney may offer evidence relating to the existence of the RV policy. Otherwise, the motion is granted, and Kearney may not offer evidence regarding Auto-Owners' handling of the RV claim.

### G. Expert Testimony

Next, Auto-Owners moves to exclude Kearney's six expert witnesses' testimony, because their testimony: (1) consists of inadmissible legal conclusions; (2) is irrelevant; and/or (3) does not involve subject matter that is that complex as to necessitate expert testimony. (Doc. No. 534). Kearney opposes the motion. (Doc. No. 549).

Auto-Owners objects to three of Kearney's experts–Larry, Petitta, and Knowe–because Auto-Owners contends that their opinions consist of improper legal conclusions. Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise

admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." As explained by one court, "[a]n expert may testify as to his opinion on an ultimate issue of fact," but the "expert may not . . . merely tell the jury what result to reach." <u>Montgomery v. Aetna Casualty & Surety Co.</u>, 898 F.2d 1537, 1541 (11th Cir, 1990). Thus, "the mere fact that an expert's conclusion trenches upon a jury does not compel its exclusion." <u>U.S. v. Milton</u>, 555 F.2d 1198, 1203 (5th Cir. 1977).

Courts, however, "must remain vigilant against the admission of legal conclusions." <u>Id.</u> This is because an expert "may not testify to the legal implications of conduct; the court must be the jury's only source of the law." <u>Montgomery</u>, 898 F.2d at 1541.

This case involves the issue of whether Auto-Owners acted in bad faith in its handling of Kearney's claim. While the Court agrees that Kearney's experts cannot testify that Auto-Owners "acted in bad faith," as that would be an inadmissible legal conclusion[4], the experts may give their opinion regarding what ordinary and reasonable claims handling practices consist of and whether or not Auto-Owners complied with those standards. As explained by one court, when "the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the insurance industry, his passing reference to a legal principle or assumption in an

---

[4]An expert cannot testify in a bad faith claims handling case to the ultimate legal conclusion that the insurance company did or did not "act in bad faith." <u>See</u>, <u>e.g.</u>, <u>Nationwide Transport Finance v. Cass Information Systems, Inc.</u>, 523 F.3d 1051, 1059-60 (9th Cir. 2008)(stating that an expert cannot testify in such a manner that he simply tells the jury how to decide the ultimate issue); <u>Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.</u>, 410 F. Supp.2d 417, 422 (W.D. Pa. 2006)(stating that "an expert may not give an opinion as to the ultimate legal conclusion that an insurer acted in 'bad faith'"); <u>McCrink v. Peoples Benefit Life Ins. Co.</u>, 2005 WL 730688, at * 4 n.2 (E.D. Pa. Mar. 29, 2005)(stating that an expert's opinion that the insurance company acted in bad faith was a legal conclusion).

effort to place his opinions in some sort of context will not justify the outright exclusion of the expert's . . . [testimony] in its entirety." Travelers Indemnity Co. of Illinois v. Royal Oak Enterprises, Inc., 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004).

Additionally, the Court rejects Auto-Owners' arguments that the facts at issue are not so complex as to warrant expert testimony and that these experts' testimony will be cumulative and redundant. The lay person is not necessarily familiar with insurance claims handling, and as such, the Court rejects Auto-Owners' arguments that the subject matter that they will testify to does not warrant expert testimony. With regards to Auto-Owners' argument that these three experts' testimony will be cumulative, the Court agrees that it appears that Knowe's opinions are redundant to the opinions of Larry and Petitta. Furthermore, the Court notes that Knowe's expert report contains several irrelevant opinions pertaining to Auto-Owners' handling of the RV policy. Accordingly, the Court is inclined to limine out the Knowe's testimony at this time. If Plaintiff continues to argue that there is a need to call Knowe, the Court will re-evaluate its decision at trial. Therefore, to the extent that Auto-Owners seeks to exclude Larry, Petitta, and Knowe from testifying, the motion is granted as to Knowe and denied as to Larry and Petitta.

Auto-Owners also seeks to exclude the expert testimony of Alex Cheng, who is an information technology ("IT") specialist. Kearney intends to call him to testify regarding the alleged inadequacy of Defendant's data backup and restore procedures. Auto-Owners argues that his testimony is not relevant to the issue of whether it committed bad faith when it denied Kearney's claim, because its reasons for denying Kearney's claim were not due to inadequate data backup or storage procedures. Instead, Auto-Owners points out that it initially denied Kearney's claim because: (1) it believed that the Zurich policy provided stacking coverage, (2) it

believed that the Zurich policy would cover all of Kearney's damages, and (3) it questioned Kearney's estimation of his damages. Thus, argues Auto-Owners, IT issues are not implicated in its failure to pay Kearney's claim sooner, and therefore, Cheng's testimony is irrelevant.

The Court agrees with Auto-Owners that there is really no evidence or argument before this Court that explains how Kearney was harmed by Auto-Owners' allegedly deficient IT system. Therefore, to the extent that Auto-Owners seeks to exclude Cheng from testifying, the Court finds that his testimony is not relevant, and the motion is granted.

Auto-Owners also seeks to exclude the expert testimony of Daniel Spragg, who is prepared to testify regarding Auto-Owners financial worth and profitability as it relates to its ability to pay a punitive damages award. Auto-Owners argues that such evidence is irrelevant to the issue of entitlement to punitive damages, and therefore, he should be precluded from testifying.

The Court agrees that Spragg's testimony is not relevant to the issue of entitlement to punitive damages. However, if the jury finds that Kearney is entitled to punitive damages, then Spragg may testify in the second phase of the trial regarding the amount of punitive damages to be awarded.

Auto-Owners also seeks to exclude the expert testimony of William Hahn, who is prepared to testify regarding the value of Kearney's claim. Auto-Owners argues that since Kearney's damages have already been determined by the first trial in this case, Hahn's testimony is unnecessary and irrelevant.

Kearney responds that Hahn's testimony will be helpful to the jury, because Hahn can

help the jury understand how an attorney or insurance adjuster would go about evaluating a claim for personal injury damages and arrive at an estimation of its value. Additionally, Kearney contends that Hahn's testimony will show that Auto-Owners should have realized that Kearney's claim was worth far more than the combined amounts of the Zurich policy, the RV policy limits, and the umbrella policy limits.

The Court reserves ruling on whether Hahn's testimony would be redundant and unnecessary due to Kearney calling Petitta and Larry to testify. Therefore, the Court reserves ruling as to whether Hahn should be excluded at this time.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Kearney's Motion in Limine Regarding His Subsequent Arrest for Driving Under the Influence (Doc. No. 519) is **GRANTED**.

(2)     Kearney's Motion in Limine to Prohibit References to Charles T. Wells, Esq. as "Justice Wells" (Doc. No. 520) is **GRANTED**.

(3)     Kearney's Motion in Limine Regarding Damages, Bankruptcy Filings, and Comparative Fault (Doc. No. 521) is **GRANTED**.

(4)     Kearney's Motion in Limine to Exclude Opinion Testimony Regarding Motives or State of Mind (Doc. No. 522) is **DENIED WITHOUT PREJUDICE.**

(5)     Kearney's Motion in Limine to Prohibit Testimony or Argument that an Insurer has an Absolute Right to a Judicial Determination of Any Issues (Doc. No. 523) is **GRANTED** only to the extent that Auto-Owners is prohibited from arguing that a

rule exists that provides a per se absolute right to a judicial determination of any issues prior to paying a claim.

(6)     Kearney's Motion in Limine to Exclude Certain Opinion Testimony of Thomas Segalla (Doc. No. 524) is **GRANTED IN PART AND DENIED IN PART**: The motion is **DENIED** to the extent that Kearney seeks to exclude the opinions that an insurer does not have a duty to pay a claim until the insurance company has determined coverage and damages and that Kearney's Civil Remedy Notice was premature; otherwise, the motion is **GRANTED.**

(7)     Kearney's Motion in Limine to Exclude Opinion Testimony of Charles Wells (Doc. No. 525) is **GRANTED IN PART AND DENIED IN PART:** The motion is **GRANTED** to the extent that Wells cannot give the following two opinions: (a) that Auto-Owners processed and handled Kearney's claim for payment under the umbrella policy reasonably and appropriately under the circumstances; and (b) that Auto-Owners did not violate Florida Statute § 624.155 in the handling of Kearney's claim.  Otherwise, the motion is **DENIED**.

(8)     Auto-Owners' Motion in Limine Regarding Facts of Kearney's Accident and Injuries (Doc. No. 528) is **DENIED**.

(9)     Auto-Owners' Motion in Limine to Exclude Extrinsic Evidence of Company Policies and Practices (Doc. No. 529) is **GRANTED IN PART AND DENIED IN PART:** The motion is **GRANTED** to the extent that Auto-Owners seeks to exclude evidence of specific acts it committed in handling the claims of other

insureds.  The motion is **DENIED** to the extent that Auto-Owners is attempting to prevent Kearney from offering evidence of certain alleged company-wide business practices set forth above.

(10)     Auto-Owners' Motion in Limine to Prohibit Plaintiff from Reading Court Orders to the Jury (Doc. No. 530) is **GRANTED.**

(11)     Auto-Owners' Motion in Limine to Exclude Evidence of Anthony Sperandeo's Errata Sheet (Doc. No. 531) is **GRANTED**.

(12)     Auto-Owners' Motion in Limine Regarding Amount of Premiums Zurich Charged for Stacked UM Coverage (Doc. No. 532) is **DENIED**.

(13)     Auto-Owners' Motion in Limine to Exclude Evidence of its Recreational Vehicle Policy (Doc. No. 533) is **GRANTED IN PART AND DENIED IN PART**: The motion is **DENIED** to the extent that Kearney may offer evidence relating to the existence of the RV policy.  Otherwise, the motion is **GRANTED**, and Kearney may  not offer evidence regarding Auto-Owners' handling of the RV claim.

(14)     Auto-Owners' Motion in Limine to Exclude Expert Testimony (Doc. No. 534) is **GRANTED IN PART, DENIED IN PART, AND THE COURT RESERVES RULING IN PART**: The motion is **GRANTED** to the extent that Auto-Owners seeks to exclude Cheng and Knowe from testifying and to the extent that Spragg may not testify unless the jury finds that Kearney is entitled to punitive damages; the Court reserves ruling on the issue of whether Hahn should be excluded from testifying; otherwise, the motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 5th day of November, 2009.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record