UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAYTON KEARNEY,

    Plaintiff,

v.                                       Case No. 8:06-cv-00595-T-24 TGW

AUTO-OWNERS INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER DENYING
## MOTION FOR NEW TRIAL

The Court now considers Plaintiff Clayton Kearney's motion for a new trial (Doc. 600), which Defendant Auto-Owners Insurance Company opposes. (Doc. 609.)

For the reasons set out in this order, Kearney's request for a new trial is denied. Furthermore, because the motion and response present the legal arguments fully, the Court finds oral argument on the motion unnecessary.

## BACKGROUND

On February 24, 2006, Kearney filed a four-count complaint against Auto-Owners alleging that the insurer wrongfully and in bad faith refused to pay him benefits under various insurance policies after he suffered catastrophic injuries in an automobile accident. Count IV of Kearney's original Complaint read: "BAD FAITH WITH RESPECT TO THE EXCESS POLICY." (Doc. 2.)

1

After the first jury trial on the issue of liability and damages concluded,[1] Kearney moved to amend his complaint. (Doc. 335.) His motion to amend stated: "This is an action for insurance bad faith arising out of a policy of insurance . . . ." Id.

Kearney's Amended Complaint contained four counts, although the only remaining count to be litigated was Count IV. (Doc. 341.) Count IV alleged: "BAD FAITH WITH RESPECT TO THE EXCESS POLICY." Under this heading, Kearney stated facts that, if true, would prove that Auto-Owners acted in bad faith, first, by failing to pay Kearney's insurance claim under the uninsured motorist portion of the umbrella policy "when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly and with due regard for the interests of the Plaintiff" (Doc. 341 ¶ 37) and, second, by violating Florida Statute §§ 626.9541(1)(i)(3)(b), (c), (d), (f), (g), and (h) in the handling of the claim.[2] (Doc. 341 ¶ 38.) Thus, Count IV of the Amended Complaint alleged that Auto-Owners committed bad faith under alternative theories: failing to timely pay Kearney's claim, and committing six particular unfair claim settlement practices.

---

[1] At the first trial, the jury determined Kearney's liability and damages. At the second trial, the jury determined whether Auto-Owners committed bad faith in denying Kearney's insurance claim.

[2] Under Florida Statute §§ 626.9541(1)(i)(3)(b), (c), (d), (f), (g), and (h), those unfair claim settlement practices were:

    (b) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
    (c) Failing to acknowledge and act promptly upon communications with respect to claims;
    (d) Denying claims without conducting reasonable investigations based upon available information;
    (f) Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;
    (g) Failing to promptly notify the insured of any additional information necessary for the processing of a claim; or
    (h) Failing to clearly explain the nature of the requested information and the reasons why such information is necessary.

In August 2009, Kearney filed a motion for partial summary judgment. In the motion, Kearney described his Amended Complaint as a cause of action that alleged that Auto-Owners committed bad faith. (Doc. 469 at 2 ¶ 1.) The motion did not specifically mention a separate claim for unfair claim settlement practices.

In October 2009, Kearney filed a Pretrial Statement that again stated: "This action is a claim by Clayton Kearney against Auto-Owners Insurance Company for insurance bad faith and punitive damages." (Doc. 503 ¶ 2.) In describing his case, Kearney asserted that Auto-Owners owed him a duty of good faith, which Kearney said Auto-Owners breached in several respects, including by "failing to issue a reservation for rights on the underlying coverage issues, failing to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to Clayton Kearney, failing to assess the substance of the coverage dispute or the weight of legal authority on the coverage issue, failing to act with diligence and thoroughness in investigating the facts specifically pertinent to coverage[,] and failing to attempt to settle the liability claim in the face of the coverage dispute." (Doc. 503 ¶ 3(a).) Although Kearney's bad faith claim was based partly on conduct prohibited by Florida Statute § 626.9541(1)(i)(3), the Pretrial Statement did not mention a separate claim for unfair claim settlement practices. Nor did Kearney ask to amend his Pretrial Statement at any time to add a separate claim for unfair claim settlement practices.

Two days before trial, Kearney submitted a proposed jury instruction and a proposed verdict form on the allegation of unfair claim settlement practices. (Doc. 569 at 3; Doc. 555.) Kearney's proposed verdict form contained one question on bad faith for failure to timely settle Kearney's claim and six questions about each of the unfair claim settlement practices under

3

Florida Statute §§ 626.9541(1)(i)(3)(b), (c), (d), (f), (g), and (h). (Doc. 555.) Auto-Owners' proposed verdict form contained only a single question on whether Auto-Owners acted in bad faith in failing to settle Kearney's claim. (Doc. 554-1.)

At the charge conference the afternoon before closing arguments, Kearney objected to Auto-Owners' proposed verdict form. (Doc. 554-1.) Kearney argued the Court should use his proposed verdict form because he had alleged a separate and independent cause of action, apart from bad faith, under Florida's Unfair Claim Settlement Practices Act. Fla. Stat. §§ 626.9541(1)(i)(3)(b), (c), (d), (f), (g), and (h) (West 2009). (Nov. 18, 2009 Tr. at 104-06.)

The Court rejected Kearney's argument. It found that in Count IV Kearney had pleaded a claim of bad faith with respect to the excess policy and alleged that Auto-Owners committed bad faith, first, by failing to pay Plaintiff's claim when it should have done so and, second, by engaging in unfair claim settlement practices. The Court approved a verdict form that asked the jury a single question about bad faith.[3] (Doc. 589.) However, the Court instructed the jury that it could consider whether Auto-Owners had committed any of the six specific unfair claim settlement practices in determining whether Auto-Owners acted in bad faith. (Doc. 591 at 12.) The Court's jury instructions and verdict form tracked Kearney's Amended Complaint by placing the unfair claim settlement practices allegations under the bad faith claim, rather than treating them as independent claims.

During closing arguments, Kearney's attorney argued to the jury that the evidence proved that Auto-Owners had committed each of the unfair claim settlement practices prohibited by

---

[3] The verdict form asked: "Do you find that Auto-Owners Insurance Company acted in bad faith in failing to settle the claim of Clayton Kearney when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interest?" The jury foreperson checked "NO." (Doc. 589.)

4

Florida Statute §§ 626.9541(1)(i)(3)(b), (c), (d), (f), (g), and (h). He told the jury: "One of the jury instructions you'll see is that we are claiming that part of the bad faith was committing one or more unfair claims settlement practices. Not just the failure to settle, but the unfair claims practices." (Nov. 19, 2009 Tr. at 44.)[4] In rebuttal, Kearney's attorney also argued: "And that's why the answer to the question [on the verdict form] is yes. Because they didn't keep their promises. Because they didn't even believe their own positions. Because they didn't follow their own rules of claims handling. Because they didn't follow the rules of the State of Florida with regards to claims handling." (Nov. 19, 2009 Tr. at 100.)

On November 20, 2009, after deliberating for seven hours over two days, the jury rejected Kearney's arguments and found that Auto-Owners had not committed bad faith in handling and failing to settle Kearney's insurance claim.

## ANALYSIS

"A court may also grant a motion for new trial upon a showing of certain substantial errors in the admission of evidence or the giving or refusal of instructions." Hall v. Norfolk S. Ry. Co., 829 F. Supp. 1571, (N.D. Ga. 1993) (citing Charles Alan Wright et al., 11 Fed. Prac. & Pro. Civ. § 2805 (1973)); see also Fed. R. Civ. P. 59(a)(1)(A).

### *A. The Verdict Form & Jury Instructions*

In his motion for a new trial, Kearney argues at length that a claim for unfair claim settlement practices can be an independent claim from bad faith. The Court does not dispute this and did not dispute it at the time of trial. Kearney could have brought a separate claim under

---

[4] Other references to unfair claim settlement practices or unfair claim handling can be found in the closing arguments. See Tr. at 24, 31-32, 42-48, 55, 61, 79, 104.

5

Florida Statute § 624.155 for unfair claim settlement practices.[5] He simply did not do so. The Amended Complaint and the Pretrial Statement demonstrate that Kearney brought one claim to the second trial—a claim of bad faith.[6]

1. *The Pretrial Order*

Because of liberalized pleading rules and the length of discovery, the pretrial statement, pretrial conference, and pretrial order serve "as the vehicle[s] for informing the parties of precisely what is in controversy." 6A Charles Alan Wright et al. Fed. Prac. & Pro. Civ. § 1522 (2d ed. 2009). "It is for this reason that the pretrial order is treated as superseding the pleadings and establishing the issues to be considered at trial." Id.; see also Pacific Indem. Co. v. Broward County, 465 F.2d 99, 103-04 (5th Cir. 1972);[7] Morro v. City of Birmingham, 117 F.3d 508, 516 (11th Cir. 1997).

---

[5] Auto-Owners also argues that in order for Kearney to bring an independent claim under Florida's Unfair Claim Settlement Practices Act, Kearney had to prove that Auto-Owners committed the practices with such frequency as to constitute a general business practice. (Doc. 609 at 10.) Kearney's own expert witness, Dennis Larry, testified to this effect. (Nov. 10, 2009 Tr. at 86-87.) While the Court considered this argument, it ultimately rejected the argument based on Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 483 F.3d 1265, 1272 (11th Cir. 2007), where the Eleventh Circuit held, "In light of the answer of the Florida Supreme Court, it is clear that Dadeland was not obligated to allege a general business practice in order to assert a § 626.9541 claim through the cause of action provided in § 624.155." Accord Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So. 2d 1216, 1232-33 (Fla. 2006).

[6] Kearney argues that his Civil Remedy Notice, filed with the Florida Department of Financial Services, which alleged violations of the Unfair Claim Settlement Practices Act, shows that he brought a claim for unfair claim settlement practices in his Amended Complaint. (Doc. 341-3.) It does not. Kearney must file the Civil Remedy Notice under Florida law as a prerequisite to suing for bad faith. Fla. Stat. § 624.155(3) (West 2009). But the Civil Remedy Notice does not constitute a filing with the Court. Parties can (and typically do) throw the kitchen sink into a Civil Remedy Notice to preserve their ability to bring a lawsuit later on every conceivable violation under the law. For example, Kearney alleged violations in his Civil Remedy Notice of Florida Statutes §§ 626.9541(i)(3)(a) and (3)(e). He did not bring these claims in any fashion in his Amended Complaint. (Doc. 341 ¶ 38.) Moreover, the Civil Remedy Notice does not state whether the violations of the Unfair Claim Settlement Practices Act and the bad faith statute are independent of each other, or not.

[7] "The failure to indicate in the pre-trial order that an issue remains to be resolved at trial usually precludes the offer of proof on the issue at trial—to the detriment of the party who has the burden to prove the issue. This commonsense rule has been followed where the plaintiff pleads a theory of recovery in his complaint, but fails to preserve the theory in the pre-trial order. . . . In this manner the pre-trial order permits the parties and the court to prepare for trial with the assurance that they know what issues they must be ready to meet." Id.

Consistent with this purpose, Rule 16(d) and Local Rule 3.06(e) state that the Pretrial Order controls the course of the trial. In this case, the Court's Pretrial Order incorporated the parties' Pretrial Statement. (Doc. 515.) Kearney's Pretrial Statement did not mention a separate claim for unfair claim settlement practices. Kearney described various alleged unfair claim settlement practices, but only as allegations to prove that Auto-Owners committed bad faith.[8] (Doc. 503 at 2.)

During trial, Kearney did not object to the Pretrial Order and did not seek to modify it. Therefore, even if Kearney's interpretation of his Amended Complaint had been correct, he extinguished his claim by omitting it from the Pretrial Statement.

2. *The Amended Complaint*

The fact that an unfair claim settlement practices claim can exist independent of a bad faith claim—and also can exist as part of a bad faith claim—made it vital that Kearney clearly plead his claim. Because the acts that constitute unfair claim settlement practices—such as denying a claim without conducting a reasonable investigation, and failing to act promptly after being told about a claim—are often the key ingredients that make up bad faith,[9] Kearney properly alleged in Count IV that Auto-Owners had committed bad faith by violating Florida

---

[8] For example, Kearney stated in the Pretrial Statement that Auto-Owners committed bad faith when it "failed to resolve the coverage dispute promptly." This allegation arguably would violate Florida Statutes §§ 626.(1)(i)(3)(c) and (g), which, respectively, prohibit "failing to acknowledge and act promptly upon communications with respect of claims" and "failing to promptly notify the insured of any additional information necessary for the processing of a claim." The Pretrial Statement also states that Auto-Owners committed bad faith by "failing to assess the substance of the coverage dispute or the weight of legal authority on the coverage issue" and "failing to act with diligence and thoroughness in investigating the facts specifically pertinent to coverage." These allegations arguably would violate Florida Statute §§ 626.(1)(i)(3)(d), which prohibits "denying claims without conducting reasonable investigations based upon available information."

[9] See Nowak v. Lexington Ins. Co., 464 F. Supp. 2d 1248, 1252 (S.D. Fla. 2006) ("[T]he evidence of violations of § 626.9541(1)(i), including Defendant's failure to adopt and implement standards, may be a way to show that Defendant did not, in good faith, attempt to settle the lawsuit, in violation of § 624.155(1)(b) . . . .").

Statute §§ 626.9541(1)(i)(3) (b), (c), (d), (f), (g), and (h).

However, if Kearney also wanted to bring an independent statutory claim of unfair claim settlement practices, Kearney should have done so in a separate count. Without bringing a separate claim in a separate count, the Court and Defendant had no way of telling whether the unfair claim settlement practices allegations were part of the bad faith claim, independent of the bad faith claim, or both. Indeed, Kearney's motion practice throughout the case reinforced the Court's reading of the Amended Complaint.

If the Court had accepted Kearney's interpretation of his Amended Complaint after the Pre-Trial Conference, Auto-Owners would have been deprived of the ability to defend pre-trial against a separate and independent claim that it did not know existed. To avoid trial by ambush, courts disfavor "shotgun pleadings" that allege multiple legal claims in a single count. Corbitt v. Home Depot U.S.A., Inc., 589 F.3d 1136, 1166 (11th Cir. 2009). The Eleventh Circuit has repeatedly re-affirmed "the principle that separate, discrete causes of action should be plead in separate counts." Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996).

Kearney argues the Federal Rules of Civil Procedure permit him to plead two independent claims in the same count. The Court does not agree. Rule 8(d)(2) permits a party to "set out 2 or more *statements* of a [single] claim" in a single count.[10] Thus, a party can plead alternative theories of the same claim in a single count. Therefore, Kearney could state one theory of bad faith—based on Auto-Owner's alleged failure to pay his claim when it should have done so—and an alternative, second theory of bad faith—based on specific violations of Florida's Unfair Claim Settlement Practices Act—in the same count. This is what Kearney did.

---

[10] Rule 8(e) also states: "Pleadings must be construed so as to do justice." For the reasons explained in this order, the Court construed the pleadings in this case in the interests of justice.

But this method of pleading does not transform two alternative theories under one claim into two independent claims, as Kearney now asserts.

Kearney also argues Rule 10(b) does not require him to plead his bad faith claim in a separate count from his unfair claim settlement practices claim. But this assumes that the two claims are not based on "separate transactions or occurrences."[11] If read as separate claims, Kearney alleged that Auto-Owners violated Florida Statute §§ 626.9541(1)(i)(3)(b), (c), (d), (f), (g), and (h) "in the ***handling*** of this claim." (Doc. 341 ¶ 38.) (Emphasis added.) Under Kearney's theory of his Amended Complaint, he also alleged bad faith because Auto-Owners "failed to attempt, in good faith, to ***pay*** [his] claim." (Doc. 341 ¶ 37.) (Emphasis added.) The handling of a claim involves all the steps that precede a decision whether or not to pay a claim. Therefore, the handling of a claim involves a separate transaction from the ultimate decision whether or not to pay a claim. Thus, the two independent claims, as Kearney now casts them, turn on separate (although inter-related) transactions or occurrences. Therefore, under Rule 10(b), Kearney should have pleaded the claims as separate counts.[12]

Kearney also argues that Auto-Owners forfeited any objection to his pleading deficiencies by not raising the issue in a motion to dismiss. But Auto-Owners cannot be expected to chase a phantom. Auto-Owners could not have moved to dismiss a claim that neither it, nor the Court, nor Kearney in his own Pretrial Statement, recognized.

---

[11] Rule 10(b) reads in part: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."

[12] In addition, Kearney's interpretation of his Amended Complaint does not comport with his own pleading practices. In May 2009, Kearney sought to amend his Amended Complaint a second time to add a civil fraud claim and a civil conspiracy claim. Even though the new claims arose from the same transaction or occurrence (as Kearney defines those terms broadly), Kearney pleaded the two new claims in ***separate*** counts. (Doc. 392.)

9

The Court did not, however, base its decision on the verdict form (or jury instructions) on a hyper-technical reading of the pleading rules. Nor did it elevate style over substance. Instead, the Court based its decision on a plain reading of the Amended Complaint and the Pretrial Statement, and on concerns about unfair surprise—all within the context of four years of litigation.

### 3. *Lack of Prejudice*

Moreover, Kearney suffered no prejudice because the jury considered and rejected his claim that Auto-Owners committed the six specified unfair claim settlement practices. The Court instructed the jury that it could consider whether Auto-Owners committed any of the unfair claim settlement practices identified in Florida Statute §§ 626.9541(1)(i) (3)(b), (c), (d), (f), (g), and (h) in determining whether Auto-Owners acted in bad faith.[13] The jury instructions specifically listed the six unfair claim settlement practices that Kearney alleged Auto-Owners violated. (Doc. 591 at 12.) Thus, the jury instructions cured any error that Kearney asserts existed in the verdict form. Because the jury found that Auto-Owners had not committed bad faith, the jury necessarily considered and rejected Kearney's allegations of unfair claim settlement practices.

Moreover, if the Court had given the jury Kearney's proposed verdict form, Auto-Owners would have been prejudiced. By breaking apart each component of Kearney's bad-faith claim, Kearney's proposed verdict form posed seven questions requiring the jury to find for the

---

[13] Despite Kearney's argument at the charge conference to the contrary (Nov. 18, 2009 Tr. at 105), a jury would consider "the totality of the circumstances" when determining whether Auto-Owners committed an unfair claim settlement practice. Shannon R. Ginn Const. Co. v. Reliance Ins. Co., 51 F. Supp. 2d 1347, 1353 (S.D. Fla.1999). "The standard for evaluating bad faith claims against insurers for first-party as well as third-party claims under the common law as well as under the [unfair claim settlement] statute is whether the insurer acted fairly and honestly toward its insured with due regard for the insured's interests." Gen. Star Indem. Co. v. Anheuser-Busch Cos, Inc., 741 So. 2d 1259, 1261 (Fla. 5th DCA 1999).

Plaintiff if they answered yes to any one, rather than considering the totality of the circumstances.

## *C. Exclusion of Expert Testimony*

Kearney also seeks a new trial because the Court excluded the expert testimony of William Hahn, a lawyer who was prepared to testify about the value of Kearney's claim. In his expert report, Hahn stated his opinion that it was reasonable to assume a jury would award Kearney economic loss damages in excess of $50 million.

In determining whether expert testimony is admissible, a district court considers whether: (1) the expert is qualified to testify competently; (2) the expert's methodology is sufficiently reliable under the Daubert inquiry;[14] and (3) whether the testimony assists the trier of facts, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact at issue. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).

Although the Court found Hahn qualified to testify, it determined that his testimony would not "assist the trier of fact to understand the evidence" related to Auto-Owners' alleged bad-faith. Fed. R. Evid. 702. (Nov. 13, 2009 Tr. at 11.) Hahn's testimony would not assist the jury for several reasons. First, Kearney had already presented substantial evidence of the value of his insurance claim and the extent of his damages. The jury was told that another jury, at an earlier trial, had determined that Kearney's economic loss damages were $35 million. Kearney's father, Bing Kearney, testified about the economic losses suffered by his son. Kearney called his attorney from the first trial, Dale Swope, who testified about how he valued Kearney's damage

---

[14] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

claim. In addition, Kearney called two expert witnesses—attorney Dennis K. Larry[15] and insurance consultant Peter Knowe[16]—who discussed the subject.

Second, Hahn's testimony related only to an issue already decided by a previous jury. The jury in this case did not need to decide the value of Kearney's insurance claim or the extent of his damages because the jury in the earlier case had already answered that question. The jury needed only to decide whether Auto-Owners acted in bad faith by refusing to pay Kearney benefits under the excess insurance policy.

Third, Hahn's testimony would not help the jury decide the issue of bad faith because Hahn testified in his deposition that he could offer no opinion about *how* Auto-Owners investigated Kearney's claim or whether Auto-Owners properly assessed the value of Kearney's claim. (Nov. 12, 2009 Tr. at 137.) Though testimony about how Auto-Owners assessed the value of Kearney's claim might have been helpful to the jury, Hahn stated in his report that he could offer no expert opinion on this subject. Therefore, Hahn's testimony would not have aided the jury in deciding the question before it, and possibly could have confused the jury into believing that it had to determine the reasonableness of Kearney's damages.

For these reasons, the Court properly excluded Hahn's expert testimony.

---

[15] Larry, for example, testified generally about how Auto-Owners should have investigated coverage, liability, and damages. (Nov. 10, 2009 Morning Session Tr. at 22-31.) He testified that Kearney's damages were "well in excess of the $500,000 that Zurich paid," (Nov. 10, 2009 Morning Session Tr. at 63-64) and he testified about the reserves that Auto-Owners set in response to its assessment of the potential damages in Kearney's case. (Nov. 9, 2009 Afternoon Session Tr. at 122-28.) See also Nov. 10, 2009 Morning Session Tr. at 47-55.

[16] Knowe, for example, testified about Auto-Owners' responsibility to investigate damages and its failure to do so, including the failure of Auto-Owners to prepare a written evaluation of Kearney's brain injury. (Nov. 16, 2009 Morning Session Tr. at 88-93.) Knowe also testified that Auto-Owners paid the limit of its $5-million policy as soon as the Court resolved a legal issue regarding the stacking of coverage—well before a jury had determined the amount of Kearney's damages. (Nov. 16, 2009 Morning Session Tr. at 113-14.)

## CONCLUSION

Because Kearney has not raised grounds under Rule 59 of the Federal Rules of Civil Procedure to warrant a new trial, his motion for a new trial (Doc. 600) is **DENIED**.

**IT IS SO ORDERED.**

Done in Tampa, Florida, on April 14, 2010.

SUSAN C. BUCKLEW
United States District Judge