UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAYTON KEARNEY,

    Plaintiff,

v.                                                                Case No.: 8:06-cv-00595-T-24-TGW

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.
_____/

## ORDER
## REVIEWING COSTS

The Court now considers Plaintiff Clayton Kearney's motion asking the Court to review the Bill of Costs taxed by the Clerk in the amount of $221,049.27. (Doc. 608.) Kearney argues that the Court should permit the Clerk to tax only $24,776.53 in costs. (Doc. 610.) Defendant Auto-Owners Insurance Company agrees that its costs should be substantially reduced from $221,049.27 to $53,437.19. (Doc. 613.)

After reviewing the Bill of Costs and both parties' arguments, the Court will vacate the Bill of Costs (Doc. 608) and order that Kearney be taxed costs in the amount of **$32,477.85**.

## DISCUSSION

As a matter of course, a prevailing party will be awarded costs authorized by 28 U.S.C. § 1920.[1] A district court, however, may only award those costs specifically permitted by federal

---

[1] Fed. R. Civ. P. 54(d).

law,[2] even where the court, as in this case, sits under diversity jurisdiction to adjudicate state law claims.[3] When challenging costs, a losing party bears the burden of persuading the court that the claimed courts should not be taxed, except where the party seeking costs possesses sole information about the challenged cost.[4]

In this case, Kearney does not contest that Auto-Owners, as the prevailing party, is entitled to costs. But he does contest for various reasons Auto-Owners's entitlement to costs in the amount of $28,660.66.

### A. Cost of Deposition Transcripts

The clerk may tax "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Although § 1920 does not specifically mention depositions, courts have long held that the cost of depositions necessary for use in a case may be taxed.[5] While Kearney acknowledges this, he objects to paying (1) postage, shipping, and courier fees charged by court reporters, (2) charges for expedited transcripts and rough-draft transcripts, and (3) the cost of duplicate copies of deposition transcripts.

#### 1. Cost of Postage, Shipping, and Courier Fees

While some courts have found that delivery costs such as postage, shipping, and courier

---

[2] Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 441-45 (1987).

[3] Kivi v. Nationwide Mut. Ins Co., 695 F.2d 1285, 1289 (11th Cir. 1983) (federal law governs taxing the cost of witnesses).

[4] Ass'n. For Disabled Americans, Inc. v. Integra Resort Mgt., Inc., 385 F. Supp. 2d 1272, 1288 (M.D. Fla. 2005); Moore's Fed. Prac. ¶54.100[3] (3d. 2009).

[5] EEOC v. W&O, Inc., 213 F.3d 600, 621 (11th Cir. 2000) (taxation of costs on depositions on losing party's witness list is permitted, even if the witness is not called at trial).

fees for depositions are not taxable,[6] district courts in the Eleventh Circuit have permitted the taxing of postage and handling fees charged by court reporters because the charges are "reasonable costs associated with depositions."[7] The Court agrees that the postage and shipping costs are reasonably associated with the cost of the deposition itself. Court reporters must charge shipping in order to deliver the transcript to counsel.

The Court recognizes that the court reporters could have e-mailed the transcripts to counsel at little, or no, cost. But in that case, the Court would have awarded Auto-Owners the cost for printing the depositions. In some instances, the printing costs would have exceeded the postage costs, which range from $7 to $12. In other cases, the charges appear roughly equivalent. The Court will make one exception in the case of Joseph Petitta's deposition. For this deposition, the Court will not allow the $32 charge for FedEx delivery when the court reporter also e-mailed the transcript to counsel at no charge. (Doc. 597 at 80.)

### 2. Cost of Expedited Transcripts and "Rough Draft" Transcripts

Kearney objects to the cost of expedited transcripts or rough-draft transcripts for numerous depositions taken during discovery. While "the cost for an expedited deposition transcript is ordinarily not taxable," the cost may be taxed where an expedited transcript was necessary for the case.[8]

Kearney asserts that Auto-Owners must bear these costs because Auto-Owners ordered

---

[6] Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006) (28 U.S.C. § 1920 allows taxing of deposition costs, but not delivery expenses of depositions).

[7] Smith v. Quintiles Int'l, et al., No. 5:04-cv-658-Oc-10-GRJ, 2007 WL 2412844, at *4 (M.D. Fla. Aug. 21, 2007) (citing U.S.E.E.O.C. v. W & O, Inc., 213 F.3d 600, 621 (11th Cir. 2000)). See also George v. GTE Directories Corp., 114 F. Supp. 2d 1281, 1298 (M.D. Fla. 2000) ("Reasonable costs associated with depositions, such as postage for the mailing of transcripts, may similarly be taxed.").

[8] Wood v. Green, No. 3:07-cv-95-MCR-EMT, 2007 WL 1380154 (N.D. Fla. March 31, 2010).

the more costly, expedited transcripts for the convenience of its attorneys. Auto-Owners counters that it ordered expedited transcripts in order to meet the Court's deadlines for the close of discovery and the filing of dispositive motions. The Court does not agree that Auto-Owners needed to order expedited transcripts or rough draft transcripts for all its witnesses to meet the Court's deadlines. The Court entered its first Case Management and Scheduling Order in the bad-faith phase of this case on September 19, 2008. Discovery did not close until August 14, 2009. Auto-Owners could have deposed many of the witnesses earlier, which would have eliminated the need to order expedited transcripts. Therefore, the Court will not tax the costs of expedited or rough draft transcripts for the following six witnesses: (1) Anthony Sperandeo, deposed on June 8-9, 2009; (2) Lisha Bowen, deposed on June 10, 2009; (3) Dale Swope, deposed on June 9, 2009; (4) Russell Ayers, deposed on August 5, 2009;[9] (5) Jodi Fagan, deposed on August 5, 2009;[10] and (6) Michael Rywant, for the deposition of June 15, 2009.

However, the Court agrees that it was necessary to obtain expedited transcripts or rough draft transcripts for 12 witnesses deposed shortly before the August 14, 2009 discovery deadline given the Court's discovery schedule. With the Court's permission, Kearney did not disclose its nine expert witnesses until July 8, 2009, about five weeks before the discovery deadline of August 14, 2009 and about seven weeks before the dispositive motion deadline of August 28, 2009. Given the complexity of the case, the Court agrees it was necessary for Auto-Owners to obtain these transcripts on an expedited basis, rather than wait the customary 30 days for court

---

[9] Although Auto-Owners states that it had difficulty getting this witness to attend the deposition before the discovery period closed, Auto-Owners has not provided requisite specificity to justify the cost of an expedited or rough draft transcript for this deposition.

[10] Id.

4

reporters to transcribe the depositions. Auto-Owners needed these deposition transcripts sooner in order to evaluate their case by the discovery deadline and prepare dispositive motions. Auto-Owners attempted to minimize the need for expedited transcripts by seeking to limit the number of expert witnesses and then by filing a motion to limit witnesses in order to avoid the expense of depositions. (Doc. 426.) However, Kearney did not agree to limit the number of expert witnesses, and the Court did not rule on the motion to limit expert witnesses until the Pretrial Conference. (Doc. 513.) Therefore, the Court will permit the cost of expedited and rough draft transcripts to be taxed for the following nine expert witnesses: (1) Peter Knowe, deposed on July 24, 2009; (2) Dennis Larry, deposed on August 7, 2009; (3) Marilyn Bota, deposed on July 23, 2009; (4) Alex Chang, deposed on July 21, 2009; (5) William Hahn, deposed on July 21, 2009; (6) Ellsworth William Hoppe, Jr., deposed on August 6, 2009; (7) Joseph Petitta, deposed on July 22, 2009; (8) Daniel Spragg, deposed on August 12, 2009; and (9) Gene Viola, deposed on August 11, 2009.

In addition, the Court will allow the cost of an expedited and rough draft transcript for two of Auto-Owners' expert witnesses: (1) Thomas Segella, deposed on August 13, 2009, and (2) Charles Wells, deposed on August 14, 2009. Because the delay in deposing the Kearney's experts caused the delay in deposing Auto-Owners' experts, Auto-Owners needed to order an expedited or rough-draft transcript for these witnesses. In addition, the Court considers an expedited or rough-draft transcript necessary for (1) the second deposition of Michael Rywant on October 8, 2009, shortly before the originally-scheduled Pretrial Conference; and (2) the deposition of Anthony Sperandeo on October 7, 2009.

The Court also finds that the $189.80 non-expedited charge for a transcript of a June 19,

2009 discovery hearing was necessary for use in the case, as Auto-Owners cited to the transcript in its response to Kearney's objection to the Magistrate Judge's ruling that followed the hearing.

### 3. Duplicate Copies of Deposition Transcripts

Auto-Owners argues that it needed to obtain two copies of deposition transcripts and depositions exhibits for several witnesses for use in the case. The Court agrees that Auto-Owners need an extra copy of these documents for use in the case because it reasonably employed two attorneys to prepare and conduct the trial. However, it was not necessary to obtain the second copy from a court reporter at considerably greater cost than merely photocopying the transcripts at $.15 per page. Since Auto-Owners claimed copying charges for the same depositions, the Court will not permit it to recover the cost of a third copy from a court reporter. Therefore, the Court will not allow the $310.75 charge for a second copy of Thomas Segall's deposition and the $551 charge for a second copy of Charles Wells' deposition.

### 4. Miscellaneous Deposition Costs

The Court will not allow the $269.70 charge for scanning exhibits and the $60 courier fees for obtaining the exhibits for scanning for the depositions of Russell Ayers and Jodi Fagan. Counsel did not need scanned copies of the exhibits when it already had paid for printed copies of the exhibits.

In addition, under the rule of Morrison v. Reichhold Chemicals, Inc. that deposition costs should be taxed in the manner that the depositions were noticed,[11] the Court will not allow the

---

[11] 97 F.3d 460, 464-65 (11th Cir. 1996) ("[W]e hold that when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed.")(footnotes omitted).

$550 videotaping charge for the depositions of Alex Chang and William Hahn. Kearney asserts that Auto-Owners did not provide in the deposition notice that the deposition would be recorded both by a court reporter and by a video photographer. In its response, Auto-Owners does not address this contention. Therefore, the Court will not permit the costs of the video to be taxed.

### B. Cost of Daily Trial Transcript

Kearney contests Auto-Owner's charge of $14,170 for a daily transcript of the eight-day trial in this case,[12] arguing that the daily transcript was purchased for the convenience of counsel and was not necessary for use in trial. Auto-Owners counters that it needed the transcript in anticipation of filing post-trial motions (due within 10 days of entry of judgment), to prepare its motion for a directed verdict at the close of Kearney's case, and to evaluate witnesses and defenses during trial. Also, Auto-Owners, as well as the Court, used the daily transcripts to review a juror's comments during voir dire when the juror's remarks became an issue mid-trial.

In Maris Distributing, Inc. v. Anheuser-Busch, Inc., the Eleventh Circuit found that while the cost of daily trial transcripts should not be allowed as a matter of course, a district court may award the cost of daily trial transcript where the length and complexity of a trial make the daily transcripts necessary.[13] This trial, lasting eight days, was not particularly long. (By comparison, the jury trial in Maris Distributing, Inc. lasted more than a month.[14]) Nor were the issues exceedingly complex. In addition, Auto-Owners had two lawyers and an experienced paralegal at counsel's table who could have taken notes on the testimony. If Auto-Owners needed a trial

---

[12] Although Auto-Owners was the prevailing party in the case, which was bifurcated into two trials, Auto-Owners did not submit any costs for the first trial.

[13] 302 F.3d 1207, 1226 (11th Cir. 2002) (clarifying the holding in In re Nissan Antitrust Litigation, 577 F.2d 910 (5th Cir. 1978)).

[14] Case No. 5:97-cv-00015-WTH (M.D. Fla.) (Hodges, J.).

transcript to prepare post-trial motions, it could have asked the Court to extend the deadline to file post-trial motions in order to obtain the transcripts. While the Court agrees that the daily trial transcript helped Auto-Owners present its defense, Auto-Owners did not need this tool to present its case. Therefore, the cost of the trial transcript will not be taxed.

### C. Expert Witness Expenses

Generally, fees and disbursements for witnesses may be taxed under 28 U.S.C. §§ 1920(3) and 1821. However, the law does not permit the district court to tax the cost of a witness preparing for his testimony.[15] Therefore, the $482.07 charge for witness Thomas Segalla to prepare for his deposition and the $127.60 charge for Charles Wells to prepare for his trial testimony will not be taxed.

Kearney also argues that Auto-Owners did not present sufficient records to justify the $775.03 travel expense for Segalla to travel from Buffalo to Tampa to attend his deposition and the $463.48 travel expense for Wells to travel from Orlando to testify at trial. Kearney argues that Auto-Owners should have provided actual receipts, rather than billing invoices, to justify the costs. The Court does not agree. The billing invoices provide sufficient information to allow the Court to determine the "actual expenses" of Segalla's airfare and find that he booked his flight "at the most economical rate reasonably available" under §1821(c). In addition, the invoices provide sufficient specificity of the "normal travel expenses" for the witnesses' hotels and other expenses.[16] Therefore, these costs will be allowed.

---

[15] Baum v. United States, 432 F.2d 85, 86 (11th Cir. 1970); see also Soberay Mach. & Equip Co. v. MRF Ltf., 181 F.3d 759, 771-72 (6th Cir. 1999).

[16] According to Segalla's billing invoice, his airfare on JetBlue from Buffalo to Tampa cost $340.80. His hotel bill for two nights stay was $292.10; his rental car cost $82.13, and airport parking cost $60. (Doc. 597 at 109-10.) Charles Wells, a former justice of the Florida Supreme Court, said at trial that he spent several nights in Tampa for the trial because he did not know on what day he would be called as a witness. His hotel bill cost $373.28. He

### D. Printing Costs

Photocopying charges are compensable if they are necessarily obtained for use in the case.[17] Unlike other types of costs, the prevailing party carries the burden of establishing entitlement to photocopying expenses.[18] Although a prevailing party cannot recover for general copying costs, a prevailing party can recover the cost of copies of discovery, pleadings, correspondence, exhibits, and documents given to the opposing parties or given to the Court. Id.

Kearney argues that Auto-Owners failed to provide evidence of the nature of the photocopies and, thus, did not establish that the copies were necessary for use in this case. But this is not a situation, like the ones cited by Kearney, where the prevailing party did not explain the use of the copies or merely asserted that a range of copies were necessary for use in a case.[19] Auto-Owners' counsel signed a sworn statement, submitted under penalty of perjury, attesting to the accuracy of the printing costs, printed at $.15 a page—a standard rate. Auto-Owners also provided a detailed description of each document, making their use self-evident.

#### 1. Printing each Docket Entry

The Court agrees that Auto-Owners needed to print a copy of each item on the docket. This is not a case where the prevailing party sought reimbursable for PACER charges. Therefore, Auto-Owners misplaced its reliance on Barrington v. Lockheed Martin Corp., where

---

also billed $90 for mileage from Orlando to Tampa, and back. Id. at 125. The Court finds that these are normal travel expenses.

[17] See In re Matos, 381 B.R. 394, 396 (Bankr. M.D. Fla. 2007).

[18] Id.

[19] For example, see Helms v. Walt-Mart Stores, Inc., 808 F. Supp. 1568, 1570 (N.D. Ga. 1992).

the district court did not allow PACER charges to be taxed.[20]

### 2. Trial Exhibits

Kearney also objects to paying the printing costs for four copies of each of Auto-Owners' trial exhibits. Auto-Owners printed four copies because it believed that the Court in its Pre-trial Order required Auto-Owners to produce four copies. The Pretrial Order, however, only required Auto-Owners to print four copies of the exhibit and witness lists, as well as one copy of its exhibits. Therefore, Auto-Owners only needed to print three copies of its exhibits—one for the Court, one for itself, and one for Kearney. Therefore, the Court will only allow printing charges of $150.30 for three copies of Auto-Owners' trial exhibits.

In addition, the Court will allow printing charges for one set of Kearney's trial exhibits at a cost of $409.80. Kearney argues that this printing charge is unnecessary because counsel provided Auto-Owners with an electronic version of the exhibits. However, the Court finds that Auto-Owners needed a paper copy, not merely an electronic version, of Kearney's trial exhibits to use during trial.

### 3. Printing of Other Documents

Kearney also argues that $2,761.35 in printing costs for documents should not be allowed because Auto-Owners obtained many of the printed documents in electronic form. However, the Court finds that Auto-Owners needed a printed version of these documents for use in the case. In addition, Kearney argues that Auto-Owners did not provide enough specificity to show that the printing costs were necessary for trial. Auto-Owners responded by explaining that Brown & Brown Insurance Agency, Zurich American Insurance Company, and Munich Reinsurance

---

[20] Case No. 6:05-cv-01601-KRS (M.D. Fla. May 3, 2007).

America, Inc. produced the printed documents in response to a subpoena. Given the role that these entities played in this case, it is clear that Auto-Owners would need to use these documents in printed form in the case. The Court also finds it self-evident that Auto-Owners would need to use documents produced by Kearney and his experts in this case. However, because Auto-Owners has not explained why it needed to print 11,906 pages of its own documents, this printing charge of $1,785.90 will not be permitted.

    **E.**    <u>**Miscellaneous Costs**</u>

Finally, Kearney challenges the $825 cost for Auto-Owners to prepare excerpts of a video deposition of Anthony Sperandeo for use at trial. The Court agrees that § 1920 does not provide the Court with the authority to tax a video trial exhibit,[21] and the Court declines to tax this video by reclassifying it as a deposition cost.[22] Auto-Owners produced the video exhibit in case Kearney did not call Sperandeo, the key insurance agent who handled Kearney's claim, as a live witness and instead used his video deposition. While this planning may have assisted Auto-Owners in the unlikely event that Kearney did not call Sperandeo to the stand, the Court finds this cost—even if treated as a deposition cost, rather than as trial exhibit cost—was solely for Auto-Owners' convenience. Therefore, the cost will not be taxed.

<u>**CONCLUSION**</u>

Accordingly, the Court orders that:

(1)    Plaintiff Clayton Kearney's motion to review costs is **GRANTED IN PART and DENIED IN PART**. (Doc. 610.)

---

[21] <u>Arcadian Fertilizer, L.P. v. MPW Indus. Servs, Inc.</u>, 249 F.3d 1293, 1297-98 (11th Cir. 2001).

[22] <u>Id.</u> at 1297 n.5.

(2) The Clerk is directed to **VACATE** the Bill of Costs taxed against Clayton Kearney on December 21, 2009 in the amount of $221,049.27. (Doc. 608.)

(3) The Court orders Plaintiff Clayton Kearney to pay Defendant Auto-Owners Insurance Company costs in the amount of **$32,477.85**.

**IT IS SO ORDERED.**

Done in Tampa, Florida, on May 10, 2010.

SUSAN C. BUCKLEW
United States District Judge