UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAYTON KEARNEY,

    Plaintiff,

v.                                           Case No.: 8:06-cv-00595-T-24-TGW

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.
_____/

## ORDER AWARDING ATTORNEY'S FEES

The Court now considers the motion, as corrected, from Defendant Auto-Owners Insurance Company for attorney's fees in the amount of $258,883.50 and costs in the amount of $221,049.27. (Docs. 596, 601.) Plaintiff Clayton Kearney urges the Court to cut the attorneys's fees by 60 percent and award Auto-Owners $103,553.40. Kearney also asks the Court to award Auto-Owners no costs beyond those permitted in 28 U.S.C. § 1920. (Doc. 606.)

Upon review, the Court awards Auto-Owners attorney's fees in the amount of **$209,685.50**. It denies without prejudice Auto-Owners' request for costs allowed under Florida law.

## BACKGROUND

The insured, Plaintiff Clayton Kearney, sued his insurer, Auto-Owners Insurance Company, for breach of contract and bad faith under Florida law for failing to pay the limits of a primary and excess insurance policy after Kearney was severely injured in an automobile

1

accident.[1] The Court divided the case into two parts, resulting in two trials: the first to determine Kearney's damages, the second to determine whether Auto-Owners acted in bad faith by failing to timely pay Kearney the $5.03-million limit of the two insurance policies. After the first jury trial, the Court determined that as a result of the automobile accident, Kearney had suffered damages of $30-million.

On September 18, 2009, more than 45 days before the November 9, 2009 start of the trial on the question of bad faith, Auto-Owners offered to settle the case for $1-million. Auto-Owners made the offer and settlement proposal as authorized by Rule 69 of the Federal Rules of Civil Procedure, Florida Statute § 768.79, and Rule 1.442 of the Florida Rules of Civil Procedure. Kearney did not respond to the offer, and, therefore, the offer lapsed.

On November 20, the jury in the bad faith trial returned a verdict for Auto-Owners, finding that it had not committed bad faith in failing to promptly pay Kearney's insurance claim. After the Court entered a judgment for Auto-Owners, Auto-Owners timely moved for attorney fees.

Auto-Owners seeks $258,883.50 in attorney's fees and $221,049.27 in costs for the 64-day period beginning on September 18, 2009, the day Auto-Owners made its settlement offer to Kearney, and ending on November 20, 2009, the last day of the jury trial. The fees account for the work of five lawyers and three paralegals with the law firm of Burr & Forman, LLP, based out of offices in Mobile and Birmingham, Alabama, and the work of four lawyers and one paralegal with the law firm of Valenti, Campbell, Trohn, Tamayo & Aranda, P.A. ("Valenti,

---

[1] Because the Court has described the extensive history of this case in several orders, it will provide only an abbreviated background here. For further background, see the Court's Order of October 19, 2009, denying the Defendant's Motion for Summary Judgment. (Doc. 509.)

Campbell"), based in Lakeland, Florida.

Burr & Forman billed $219,499.50 for 1,183.10 hours of work, and Valenti, Campbell billed $39,384 for 384 hours of work.

## ANALYSIS

**I. AUTO-OWNERS IS ENTITLED TO ATTORNEY'S FEES UNDER FLORIDA STATUTE §768.79 FOR A 64-DAY PERIOD STARTING SEPTEMBER 18, 2009**

In the American legal system, each party generally must pay its own attorney's fees and expenses.[2] However, in order to advance a variety of public policy goals, Congress and the states have enacted hundreds of laws that shift attorney's fees to an opposing party.[3] One of these laws, Florida Statute § 768.79, shifts fees to encourage parties to settle cases without a trial and to sanction parties who unreasonably reject settlement offers.[4] To obtain attorney's fees under the statute, a defendant must first file an offer of judgment on the plaintiff no later than 45 days before the earliest trial date.[5] The statute imposes detailed procedural requirements—that must be strictly observed—on the content of the offer.[6] The plaintiff must then reject the offer or

---

[2] Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

[3] For a partial list of federal statutes that shift fees, see Kenny A. v. Perdue, 547 F.3d 1319, 1337 (11th Cir. 2008) (Carnes, J., dissenting from denial of rehearing en banc).

[4] Allstate Prop. & Cas. Ins. Co. v. Lewis, 14 So. 3d 1230, 1235 (Fla. 1st DCA 2009) (quoting BDO Seidman, LLP v. British Car Auctions, Inc., 802 So. 2d 366, 371-72 (Fla. 4th DCA 2001) (Gross, J., concurring)).

[5] See Fla. R. Civ. P. 1.442 ("No settlement proposal shall be served later than 45 days before the date set for trial or the first day of the docket on which the case is set for trial, whichever is earlier."). Auto-Owners' offer of judgment was served on September 18, 2009, 46 days before November 2, 2009, the first day of the Court's November 2009 trial calendar.

[6] Florida Statute § 768.79(2) states that an offer must:

    (a) Be in writing and state that it is being made pursuant to this section.
    (b) Name the party making it and the party to whom it is being made.
    (c) State with particularity the amount offered to settle a claim for punitive damages, if any.
    (d) State its total amount.

let it lapse. If at trial, the plaintiff wins a judgment worth less than 25 percent of the settlement offer, or the judgment states that the defendant had no liability, then the plaintiff must pay defendant's attorney's fees beginning from the date of the offer.

Because Florida Statute §768.79 exists to implement the state's public policy, the Eleventh Circuit found in Menchise v. Akerman Senterfitt[7] that the statute serves as substantive, rather than procedural, law. Therefore, federal courts in Florida, when adjudicating Florida law claims, must apply Florida Statute §768.79, rather than federal law, to determine whether to award attorney's fees.

Applying Florida law, the Court agrees that Auto-Owners is entitled to attorney's fees and expenses under Florida Statute §768.79 because Auto-Owners properly filed an offer of judgment that complied with the statute's strict requirements and that Kearney did not accept before trial. Auto-Owners is entitled to attorney's fees for a 64-day period beginning on September 18, 2009 and ending on November 20, 2009.

Kearney does not seriously contest this point.[8] Instead, Kearney argues that Auto-Owners' fees are unreasonable and excessive.

## II. AUTO-OWNERS' ATTORNEY'S FEES WILL BE REDUCED

### A. Choice of Law

Just as a federal court must apply state law to determine whether a party is entitled to

---

Florida Rule of Civil Procedure 1.442 imposes additional requirements. All requirements must be met and "[b]ecause the overall subject is in derogation of the common law, all portions must be strictly construed." Campbell v. Goldman, 959 So. 2d 223, 227 (Fla. 2007).

[7] 532 F.3d 1146, 1150 (11th Cir. 2008). See also Jones v. United Space Alliance, LLC, 494 F.3d 1306, 1309-10 (11th Cir. 2007).

[8] "The proposal for settlement appears to be valid," Kearney writes in his response. (Doc. 606 at 4.)

4

fees, it must also apply state law to resolve disputes about the reasonableness of fees.[9] The Florida Supreme Court, however, has turned the law full circle by adopting the federal lodestar method, rather than a state rule, to determine what constitutes "reasonable" attorney's fees. In Florida Patient's Compensation Fund v. Rowe,[10] the Florida Supreme Court found that the federal lodestar approach "provides a suitable foundation for an objective structure" to determine what constitutes "reasonable" fees. Thus, to a large extent, Florida law and federal law on determining attorney's fees mirror each other.[11] However, the Florida Supreme Court has carved out some differences to the federal approach. Federal courts, when applying the lodestar method to a federal statute, determine what constitutes a lawyer's reasonable hourly rate by looking at "'the prevailing market rates in the relevant community.'"[12] By contrast, when awarding fees under Florida Statute § 768.79(7)(b), the Florida Supreme Court reaffirmed in Sarkis v. Allstate

---

[9] Trans Coastal Roofing Co. v. David Boland, Inc., 309 F.3d 758, 760 (11th Cir. 2002); Philip Ledington, Inc. v. Assurance Co. of America, No. 2:06-cv-208-FtM-29-SPC, 2007 WL 2714095, at *2 (M.D. Fla. Sept. 17, 2007); Dunworth v. Tower Hill Preferred Ins. Co., No. 05-14019-CIV, 2006 WL 889424 (S.D. Fla. Jan. 18, 2005).

[10] 472 So. 2d 1145 (Fla. 1985). The Florida Supreme Court modified its ruling in Rowe in Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828 (1990).

[11] See Watson v. Wal-Mart Stores, Inc., No. 4:03-cv-402-RH/WCS, 2005 WL 1266686, at *2 n.4 (N.D. Fla. May 25, 2005) ("It perhaps could be debated whether federal or Florida law governs determination of the *amount* of fees to be awarded under the Florida offer of settlement statute in a diversity case litigated in federal court. But the result would be the same either way [in this case, which did not involve a contingency fee arrangement permitted by Florida law, but prohibited by federal law].").

[12] Perdue v. Kenny A., __ S.Ct. __, 2010 WL 1558980, at *5-6 (April 21, 2010) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)). Federal courts have moved away from relying on the subjective factors spelled out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). These factors were: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Hensley v. Eckerhart, 461 U.S. 424, 430, n.3 (1983).

Insurance Company[13] that courts may consider subjective factors, as set out by the Florida Rules of Professional Conduct,[14] as well as six similar factors set out in statute.[15] Thus, while the Court can largely rely on federal law to award attorney's fees, it must follow Florida law to the extent that state law differs.

### B. Process for Determining Reasonable Attorney's Fees

Unlike federal statutes that shift attorney's fees in order to promote public policy or enpower private attorney generals, Florida Statute § 768.79 operates as a sanction to punish parties who unreasonably reject settlement offers and clog the courts with cases.[16] Because the fees operate as a sanction, the statute "must be strictly construed in favor of the one against whom the penalty is imposed and is never extended by construction."[17]

When moving for attorney's fees, the party seeking fees bears the burden of establishing

---

[13] 863 So. 2d 210 (Fla. 2003).

[14] Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828 (1990).

[15] Florida Statute § 768.79(7)(b) reads:

"When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:

1. The then apparent merit or lack of merit in the claim.
2. The number and nature of offers made by the parties.
3. The closeness of questions of fact and law at issue.
4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.
5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.
6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged."

[16] Sarkis v. Allstate Ins. Co., 863 So. 2d 210, 218 (Fla. 2003) ("In sum, we have recognized that attorney fees awarded pursuant to the offer of judgment statutes are sanctions. These fees are awarded as sanctions for unreasonable rejections of offers of judgment.")

[17] Id. at 223. See also Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So. 2d 276, 278 (Fla. 2003).

entitlement to the fees, and documenting hours and reasonable rates.[18] Each entry "ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."[19] Moreover, "[a] well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case."[20]

In this case, Auto-Owners' attorney's fees motion falls somewhat short of the standards for a well-prepared fee petition. Not only did Auto-Owners fail to provide any information about the experience, skill, or education of the most of the attorneys and paralegals who worked on this case, it did not even provide the names of the attorneys and paralegals—leaving it to opposing counsel and the Court to figure out the identity of the people whose initials appear on the firm's bills. Nor did Auto-Owners supply any affidavits from other counsel attesting to the reasonableness of their hourly rates or the number of hours charged. Many of the entries on Auto-Owners' bills also amount to "block billing" that combine into one block different entries for different type of work—some compensable, some not. Other entries are simply so vague that the Court, even if it construes how much time was spent on the task, cannot determine the nature of the work done. Auto-Owners also failed to provide a summary of its fees or calculate subtotals that group fees by the category of work.

Because Florida Statute § 768.79 "must be strictly construed in favor of the one against whom the penalty is imposed,"[21] the Court will not award Auto-Owners attorney's fees where it has failed to meet its burden to present "specific and detailed evidence from which the court can

---

[18] Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

[19] Id.

[20] Id.

[21] Sarkis v. Allstate Ins. Co., 863 So. 2d 210, 223 (Fla. 2003)

determine the reasonable hourly rate"[22] and the reasonable number of hours charged.

### C. Overall Reduction

Kearney first asks the Court to impose an across-the-board 60 percent cut to the total bill. Kearney argues that an overall cut, rather than itemized cuts to the 218 billing entries that Kearney opposes, is warranted for two reasons. First, Kearney argues that it would not be practicable for the Court to review all of its 218 objections. Second, Kearney argues that the itemized objections do not account for the aggregate effect of overbilling caused by Auto-Owners' legal team having "too many cooks in the kitchen." The Court does not agree with either argument.

Auto-Owners has not sought attorney's fees for years of litigation. Instead, about two months of bills are at issue. Furthermore, the Court can review Kearney's 218 objections without spending an unreasonable amount of judicial resources. Given that Kearney could identify the objections and prepare a well-researched brief on the matter within 14 days, there is no reason that the Court, which does not operate under the same time restraints, cannot evaluate the objections.

The Court also does not find the total bill—$258,883.50 for two months of work—to be "patently excessive" and "clearly unreasonable" on its face, as Kearney argues. The work at issue involved preparation for and participate in an intensive, 8-day trial, which involved 200 exhibits and numerous expert witnesses. Aside from the amount of attorney's fees, the number of hours spent preparing for and conducting the trial does not appear on its face to be "patently excessive." Without any context, it may appear that attorneys should not have spent a combined

---

[22] Norman, 836 F.2d at 1303.

1,567 hours over two months working on this case. However, with more than $30-million at stake, it would be reasonable to expect Auto-Owners's two principal lawyers and a single paralegal to work full-time on this case before the trial and during trial. If the two lawyers and one paralegal did this, not counting weekends before trial and using a 10-hour workday, they would have worked a combined 1,440 hours, which would account for 92 percent of the time in this case. That figure does not take into account the work of the other seven lawyers and three paralegals who worked on the case.

Because the attorney's fees do not appear on their face to be excessive, the Court will review Kearney's objections.

> D. **Reasonable Hourly Rate**

Under the lodestar method, the first step in calculating attorney's fees is determining a reasonable hourly rate. An applicant can meet its burden of supporting its hourly rate by producing direct evidence of rates charged in similar cases, or by presenting opinion evidence of reasonable rates. Auto-Owners presented neither type of evidence. In fact, because Auto-Owners provided no information to the Court about the experience of their attorneys and paralegals, the Court has little basis to approve the hourly rates submitted for attorneys whose work it did not observe. However, with two exceptions, Kearney does not object to the $225-an-hour rate charged by Auto-Owners's counsel and staff at Burr & Forman in Alabama[23] and the $125-rate charged by Auto-Owners's Lakeland counsel at Valenti, Campbell. Because Kearney does not object and because these rates are reasonable for this type of insurance defense work

---

[23] Two other people—presumably attorneys—billed a combined 4.5 hours at lower rates. A person identified only as DCD billed at an hourly rate of $205, and another person identified only as SAB billed at an hourly rate of $215. Kearney does not object to these rates.

before and at trial, the Court will approve the hourly rates, with two exceptions.[24]

### 1. *Paralegal Rates*

Kearney objects to paying paralegal Patti Grove (identified only as "PG") an hourly rate of $110, and a paralegal identified only as "AH" an hourly rate of $75. Auto-Owners provided the Court with no information about Grove's or AH's experience or skill. Therefore, the Court will treat both as entry-level paralegals. Kearney argues that the market for paralegal work in Tampa, the relevant legal community,[25] supports an hourly rate of $65. Kearney bases the $65 hourly rate on the rate charged for paralegals by Auto-Owner's Lakeland counsel. Because Auto-Owners failed to meet their burden to provide "specific and detailed evidence from which the court can determine the reasonable hourly rate," the Court will grant Kearney's request to reduce Grove's and AH's hourly rate to $65.[26] As Kearney observes, the Court has found that $65 is a "reasonable rate" for paralegal or legal assistant in other cases.[27]

### 2. *Attorney Rates*

While Kearney does not contest the hourly rates for most of the attorneys assigned to the

---

[24] "Where the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." Norman, 836 F.2d at 1303(citing Davis v. Bd. of School Comm'rs, 526 F.2d 865, 868 (5th Cir. 1976)).

[25] The relevant legal community is the area where the case is pending. Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999).

[26] Norman, 836 F.2d at 1303.

[27] Although Kearney cites to cases in Ft. Myers, Jacksonville, and Orlando, the Court observes that the paralegal rates in Tampa are similar to these legal markets. See Philip Ledington, Inc. v. Assurance Co. of Am., No. 2:06-cv-208, 2007 WL 2714095, at *4 (M.D. Fla. 2007) (Steele, J.) (approving $60 hourly rates for legal assistants with less then three years of experience), Wilson v. Dep't of Children & Families, No. 3:02-cv-357-J-32-TEM, 2007 WL 1100469, at *4 (M.D. Fla. ) (Corrigan, J.) (finding a $65 hourly rate for a paralegal to be reasonable); Pyczynski v. Kirkland's Stores, Inc., No. 6:07-cv-802-Orl-22-KRS, 2008 WL 544864, at *3 (M.D. Fla. Feb. 26, 2008) (Conway, J.) (approving a $95 hourly rate for a paralegal with nine years experience, and approving a $65 hourly rate for an administrative assistant who did basic paralegal work). See also Muegge v. Heritage Oaks Gulf & Country Club, Inc., No. 8:05-cv-354-T-24-MAP, 2006 WL 1678840, at *4 (M.D. Fla. June 16, 2006) (Bucklew, J.) (finding a $65 hourly rate for a paralegal to be reasonable).

case, he does challenge the $175 hourly rate for a person identified only as ALS. Kearney has determined that ALS is an attorney at Burr & Forman named Anna L. Scully, who was admitted to the Alabama Bar on September 25, 2009, shortly before the trial in this case. Auto-Owners provided no information about Scully's experience, so the Court must rely on Kearney's research and on the information posted on Burr & Forman's website to evaluate Scully's experience and credentials.[28] The Court agrees that a $175 hourly rate for a freshly-minted lawyer researching case law in an insurance defense case is not reasonable. Therefore, the Court cuts Scully's rate to $125 an hour.

### E. **Reasonable Number of Hours**: **Objections to Billing Entries**

In addition to objecting to the amount of time that Auto-Owners spent preparing for trial and then defending itself at trial, Kearney raises 218 objections to specific billing entries. The Court has reviewed each objection and indicated in the charts attached to this Order the Court's ruling on all 218 objections. The Court incorporates the attached charts into its Order.

Kearney's objections can be placed into one of five categories, discussed below.

#### 1. *Block Billing*

As any client can attest, "block billing makes [review of bills] unnecessarily difficult."[29] It also "warrants reduction of the number of hours claimed in the attorneys' fee motion."[30] In Hensley v. Eckerhart, the Supreme Court counseled that attorneys should "maintain billing time

---

[28] See www.burr.com/attorneys/AnnaLScully.aspx (last visited May 3, 2009).

[29] Zachloul v. Fair Debt Collection and Outsourcing, No. 8:09-CV-128-T-27-MAP, 2010 WL 1730789, at *3 (M.D. Fla. March 19, 2010).

[30] Id.

11

records in a manner that will enable a reviewing court to identify distinct claims."[31] When attorneys include multiple tasks in a single time entry, courts cannot determine the amount of time spent on particular tasks. While attorneys cannot be expected to account for every second of their time, they should be expected to explain in discrete entries the nature of the work that they want a client or opposing party to pay them hundreds of dollars to perform.

In this case, Auto-Owners billing records are littered with block billing entries that make it difficult for the Court to know what work was done when and for how long. Block-billing prevents the Court from evaluating whether or not the attorney or paralegal spent a reasonable amount of time, in the exercise of good "billing judgment" on a task.[32] The Court cannot cleanly divide time, either, where one block of time contains compensable and non-compensable tasks. For this reason, the Court, as detailed in the attached chart, has either awarded no attorney's fees to "block billing" entries or significantly reduced the requested attorney's fees.

### 2. *Conference Time*

Kearney acknowledges that courts may award attorney's fees for conferences or meetings that allow attorneys with different strength to collaborate.[33] As the saying goes, two heads are better than one. But Kearney objects to conferences whose purpose appears to be to divide work between the two law firms representing Auto-Owners. Kearney draws a distinction between conferences to divide work among the entire defense team, which Kearney does not oppose, and conferences used to divide work between the two law firms, which Kearney does oppose. This

---

[31] 461 U.S. 424, 437 (1983).

[32] Id.

[33] Brother v. Miami Hotel Investments, Ltd., 341 F. Supp. 2d 1230, 1237 (S.D. Fla. 2004).

seems like a distinction without much difference. In today's world of instant communication, lawyers often collaborate across city and state lines as part of one defense unit. For instance, Forrest Latta and S. Greg Burge, the two principal lawyers for Auto-Owners with Burr & Forman LLP, work in different cities in Alabama. Whether Latta picked up the phone in Mobile to consult with Burge in Birmingham, or whether he called a lawyer in Lakeland with a different firm, seems to make little difference. Communication and coordination are essential to successful litigation, whether a colleague works down the hall or across the country. Delegating a task to a lawyer in a different firm seems no different than dividing duties among lawyers in the a regional or national firm with offices in different cities. Therefore, the Court has not reduced any attorney's fees to eliminate for conferences between the two firms representing Auto-Owners.

### 3. *Clerical Work*

A court may award fees for work done by law clerks or paralegals only when they perform work typically done by lawyers.[34] Because Auto-Owners repeatedly billed for clerical work done by paralegals or assistants, the Court has reduced the requested attorney's fees substantially.

In a few instances, Kearney also objects to attorneys performing clerical work. Where the Court determined in these few instances that attorneys did clerical work better performed by non-lawyers, it reduced fees accordingly.[35]

---

[34] Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988).

[35] See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("'It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.'") (quoting Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974)).

### 4. *Travel Time*

Although Auto-Owners can opt to hire an out-of-town lawyer, an opposing party should not be required to pay for this choice unless no local counsel can be found.[36] In this case, Auto-Owners could have hired any number of attorneys in Tampa. Therefore, the Court will reduce travel time from the attorney's fees bills.

In a few cases, attorneys claim that they worked while traveling to Tampa. But in most of these instances, the billing entries do not state how much time the attorneys spent working and how much time they spent traveling. Even the most industrious attorney cannot work the entire time while traveling. An attorney flying between Birmingham and Tampa, for instance, would need to put down his papers while driving, boarding a flight, and walking through airport security.

Kearney also objects to the time entries of lead counsel S. Greg Burge, who blocked hours of time for attending the trial and traveling to his hotel. Kearney asserts that Burge's entries show that he spent hours traveling from the courthouse to his hotel during trial. Kearney makes this claim because Burge billed for more time than the Court was in session during the trial. The Court does not read the billing entries to make this claim. Instead, Burge billed for time attending the trial, even though the time entries indicate travel from his hotel. Since an attorney would reasonably need to show up at the courthouse early enough to organize his materials, talk to witnesses or co-counsel, and build in time for unexpected delays, the Court is not surprised that Burge needed to bill more time than the Court was actually in session during

---

[36] See Watson v. Wal-Mart Stores, Inc., No. 4:03-cv-402-RH/WCS, 2005 WL 1266686, at *3 (N.D. Fla. May 25, 2005).

trial. Therefore, the Court has not reduced Burge's "travel time" during trial because, despite the presence of "travel time" on the entries, the Court believes the time entries during the trial account for Burge's time spent on legal work before, during, and after the trial sessions. Even if some of the time is for travel, the Court finds the travel time during trial was necessary.

     5.     <u>Vague Entries</u>

The Court agrees with Kearney that many of the billing entries are so vague that Auto-Owners failed to meet its burden to present "specific and detailed evidence from which the court can determine the reasonable hourly rate."[37] A court may eliminate or reduce an award where a time entry is excessively vague.[38] As a result, the Court has substantially reduced many of the time entires. In the chart attached to this order, the Court has indicated the instances where it found Burr & Forman's bill and Valenti, Campbell's entries to be excessively vague. In some instances, the entries were vague because of "block billing." In other instances, the entries themselves failed to adequately describe the work. In numerous instances, the Court reduced fees for multiple reasons.

An accounting of the Court's reductions is attached to this Order and incorporated into the Order.

---

[37] <u>Norman</u>, 836 F.2d at 1303.

[38] <u>Wendel v. USAA Cas. Ins. Co.</u>, No. 8:08-cv-536-T-23-EAJ, 2009 WL 1971451, at *3 (M.D. Fla. July 8, 2009).

In summary, the Court made the following reductions to the requested attorney's fees:

|  | Burr & Forman Fees | Valenti, Campbell Fees | TOTAL |
|---|---|---|---|
| **TOTAL BILL SUBMITTED** | $ 219,499.50 | $ 39,384.00 | $ 258,883.50 |
| Kearney's Proposed Reductions | $ (86,245.50) | $ (23,598.00) | $ (109,843.50) |
| Court's Reductions | $ (41,354.50) | $ (7,843.50) | $ (49,198.00) |
| **TOTAL FEES ALLOWED BY COURT** | **$ 178,145.00** | **$ 31,540.50** | **$ 209,685.50** |

### III. AUTO-OWNERS' REQUEST FOR COSTS IS DENIED WITHOUT PREJUDICE

In addition to authorizing an award of attorney's fees, Florida Statute § 768.79 authorizes a court to award a defendant "reasonable costs, including investigative expenses." The statute, however, does not define "reasonable costs." Under § 768.79, though, the Court can only award costs for the 64-day period beginning on September 18, 2009.

However, costs under Florida law are not the same as costs under federal law. Costs under federal law are limited to a narrow range of items in 28 U.S.C. § 1920. In addition, as the prevailing party in this case, Auto-Owners is entitled to costs under § 1920 for the *entire* case—not just for the 64-day period triggered by a settlement offer. In a separate order, the Court has reviewed the costs taxed by the Clerk in this case and determined under § 1920 that Auto-Owners should receive $32,77.85 of the $221,049.27 it requested.

However, the costs awarded under § 1920 may not be the same costs that Auto-Owners could receive under § 768.79. Florida law may be more generous than federal law, and authorize payment of certain costs (such as part of Auto-Owners' $163,230 in expert witness fees) that federal law would not allow.

However, although Auto-Owners seeks costs under § 768.79, it offers no legal analysis and no case citations for why the Court should treat the "reasonable costs" provision of Florida

16

Statute § 768.79 as substantive law that federal courts must follow in a diversity case. Normally, costs are considered procedural law, even in diversity cases such as this one.[39] However, the Court recognizes that the Eleventh Circuit in <u>Menchise v. Akerman Senterfitt</u> treated Florida Statute § 768.79 as substantive law for purposes of deciding one's entitlement to attorney's fees.[40] Federal courts in Florida also follow state law to determine what constitutes a reasonable amount of attorney's fees, especially where Florida law on contingency fees and multipliers departs from federal law. In addition, this Court in <u>Arnold v. Busch Entertainment Corp.</u> recently awarded expert witness fees under Florida Statute § 768.70 as a "reasonable cost" even though expert witness fees would not be permitted under federal law.[41]

The Court, however, will reserve a final ruling on this issue if Auto-Owners wishes to re-submit a properly-organized list of costs with adequate documentation for costs incurred *only* during the 64-day period beginning on September 18, 2009 and ending on November 20, 2009.[42] Rather than take care to submit proper documentation for the costs it sought, Auto-Owners simply resubmitted its Bill of Costs for the entire case without differentiating between the two types of costs. Auto-Owners' failure to account for its costs, or seek leave to amend its costs, is particularly troubling as Auto-Owners conceded that § 1920 did not entitle it to $167,612.08 that

---

[39] <u>Wendel</u>, 2009 WL 1971461, at *6.

[40] 532 F.3d 1146, 1150 (11th Cir. 2008). <u>See</u> <u>also</u> <u>Jones v. United Space Alliance, LLC</u>, 494 F.3d 1306, 1309-10 (11th Cir. 2007).

[41] No. 8:07-cv-1490-T-24-MAP, 2008 WL 5341148, at *4 (M.D. Fla. Dec. 19, 2008) (relying on <u>Walgreen Co. v. Sklandis</u>, 895 So. 2d 1201 (Fla. 3d DCA 2005)). Kearney distinguishes <u>Arnold</u> because the plaintiff in <u>Arnold</u> did not dispute the award of expert witness fees as a cost.

[42] The Court instructs Auto-Owners to prepare a summary of its costs in a chart format using Microsoft Excel. To facilitate the Court's review, counsel should e-mail a copy of the filed chart to the Court's chambers at Chambers_FLMD_Bucklew@flmd.uscourts.gov. The chart should not contain any formulas or hidden codes, or be locked. Auto-Owners should also provide a courtesy copy of the chart to opposing counsel.

17

the Clerk taxed. The Court will not pour through these records again to do the job that Auto-Owners should have done in the first instance.

Because Kearney has suggested that the Court allow Auto-Owners to re-submit its costs under § 768.79, the Court will grant Auto-Owners a second opportunity to ask for costs, if it wishes to do so. If Auto-Owners re-submits its motion for costs, Auto-Owners should not seek costs a second time that the Court has already awarded under § 1920. Auto-Owners is not entitled to be paid the same costs twice. If Auto-Owners believes that it is entitled to costs under Florida Statute § 768.79 that would not be permitted under federal law, then it needs to make a legal argument to advance its request for individual costs sought and should cite to case law for each cost. In addition, Auto-Owners must document that the costs incurred were for work done during the 64-day period beginning September 18, 2009.

## CONCLUSION

Therefore, it is **ORDERED** that Auto-Owners' motion, as corrected, for attorney's fees and costs (Docs. 596, 601) is **GRANTED IN PART and DENIED IN PART** as follows:

(1) The motion is **GRANTED IN PART** to the extent that the Court finds that Auto-Owners is entitled to an award of attorney's fees under Florida Statute § 768.79.

(2) The motion is **DENIED IN PART** to the extent that the Court finds that Auto-Owners is not entitled to the full amount of attorney's fees that it seeks.

(3) The Court orders Plaintiff Clayton Kearney to pay Defendant Auto-Owners Insurance Company attorney's fees in the amount of **$209,685.50**.

(4) The motion is **DENIED WITHOUT PREJUDICE** to the extent that it seeks reasonable costs under Florida Statute § 768.79. Auto-Owners is granted leave to

file an out-of-time motion for reasonable costs, with detailed documentation attached to the motion, by May 28, 2010.

**IT IS SO ORDERED**.

Done in Tampa, Florida, on May 14, 2010.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge