UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


CLAYTON KEARNEY,

        Plaintiff,

v.                               Case No.: 8:06-cv-00595-T-24-TGW

AUTO-OWNERS INSURANCE COMPANY,

        Defendant.

_____/

**ORDER AWARDING**
**ATTORNEY'S FEES**

      The Court now considers Plaintiff Clayton Kearney's motion for attorney's fees (Doc.

598), which Defendant Auto-Owners Insurance Company opposes.  (Doc. 604.)

      Kearney seeks attorney's fees under two Florida statutes, §§ 627.428 and 627.727, which

provide that an insured who prevails in a coverage dispute with his insurance company must

receive attorney's fees if the insurance company wrongly forced him to resort to litigation.  The

Court finds that the dispute between Kearney and Auto-Owners over the limits of an underlying

primary policy was a controversy over coverage, not a controversy over damages or set-offs as

Auto-Owners claims.  The Court also find that because Auto-Owners wrongly denied coverage

and forced Kearney to resort to a lawsuit to obtain coverage, Florida law requires that the Court

award Kearney attorney's fees for resolving the coverage dispute.

**BACKGROUND**

      On July 27, 2002, Plaintiff Clayton Kearney, the 17-year-old son of developer Charles

Wesley "Bing" Kearney Jr., was severely injured in an automobile accident.   At the time of the accident, Clayton Kearney had been a passenger in a car driven by an uninsured motorist.  Two separate insurance companies provided coverage to Clayton Kearney through three separate policies issued to his father and his father's business, Kearney Development Company, Incorporated.[1]  The three insurance policies were:

(1)     A primary policy issued by Zurich American Insurance Company ("Zurich"), whose $500,000 per incident coverage limit became a subject of a stacking dispute;

(2)     A primary policy issued by Defendant Auto-Owners Insurance Company, known as the "Recreational Vehicle Policy," which had a $30,000 coverage limit; and

(3)     An umbrella policy issued by Auto-Owners, known as the "Executive Umbrella Policy," that had a $5-million coverage limit.  Auto-Owners only had to pay the umbrella policy if Kearney's damages exceeded the limits of the first two primary policies.

The primary policy issued by Zurich to Kearney Development Company, Inc. covered 145 vehicles and limited uninsured motorist insurance coverage, or "UM" coverage, to $500,000 per incident.  When Kearney Development bought the policy, it did not pay for stacked coverage nor did it intend to stack coverage such that it could multiply the $500,000 per incident limit by 145 vehicles for a total per incident coverage limit of $72.5 million.[2]  However, by mistake,

_____

[1] Zurich issued a primary policy to Kearney Development Company, Inc., which named Clayton Kearney as an insured.  (Doc. 48, Exh. A-1, A-2.)  Auto-Owners also issued two policies to Plaintiff's father, Bing Kearney, that provided coverage to his son.  (Doc. 2, Exh. A-B.)

[2] This is true even though Kearney initially took the opposite position in state court litigation against Zurich.

Zurich issued the primary policy with a stacking provision, creating on paper a $72.5-million per incident coverage limit.

When Zurich refused to pay Kearney's claim, Kearney sued Zurich in state court, alleging failure to pay insurance benefits and bad faith in handling his claim.[3]  Kearney and Zurich ultimately settled the lawsuit, and Zurich paid Kearney the $500,000 limit of its primary policy.  Zurich and Kearney acknowledged that Zurich issued the primary policy as a stacking policy by mutual mistake, and Zurich and Kearney also agreed that they did not intend to stack coverage to create a $72.5-million per incident policy limit.[4]  The parties intended to create a $500,000 per incident limit.

After the settlement with Zurich, in which Zurich and Kearney agreed they had not intended the Zurich policy to be issued as a stacking policy, Kearney turned to Auto-Owners for coverage under the $5-million umbrella policy.  In a letter dated April 28, 2005, Kearney's attorney wrote: "We believe that the Auto Owners policy limits should be paid now."[5] Kearney's attorney did not doubt that Kearney's economic losses from the accident exceeded $5-million.  Because Kearney stood, before the auto accident, to take over his father's company, Kearney's attorney wrote that his "future lost earnings in this case are the largest I have ever seen."[6]

When Auto-Owners failed to pay the $5-million, Kearney filed a Civil Remedy Notice

---

[3] The case, <u>Clayton Kearney v. Anthony David Sorrentino & Zurich American Insurance Company</u>, Case No. 04-CA-003457, was filed in the 13th Judicial Circuit in Hillsborough County.  (Doc. 48-3.)

[4] Doc. 118 at 10; Sealed Doc. S-3 (settlement agreement and release between Kearney and Zurich filed under seal).

[5] Doc. 598-2.

[6] <u>Id.</u>

with the Florida Department of Financial Services on November 4, 2005.  Under Florida law, the

Civil Remedy Notice gave Auto-Owners 60 days to pay Kearney's claim to avoid extra liability,

above the $5-million policy limit, for handling the claim in bad-faith.[7]  On January 9, 2006,

Auto-Owners responded to the Civil Remedy Notice and offered four reasons why Auto-Owners

would not pay Kearney's claim.[8]  Among the reasons for denying the claim, Auto-Owners said

Kearney had already been fully compensated for his damages by the Zurich settlement.

On February 24, 2006, Clayton Kearney filed a lawsuit in state court against Auto-

Owners.  The lawsuit contained four counts. Counts I and II alleged failure to pay insurance

benefits under, respectively, the $30,000 Recreational Vehicle Policy and the $5-million

Executive Umbrella Policy.  Counts III and IV alleged bad faith handling of Kearney's claims

under these two policies.  Auto-Owners removed the case to federal court on April 7, 2006.

Broadly speaking, Auto-Owners' defense consisted of four arguments.  First, Auto-

Owners argued that because Zurich American Insurance had issued a primary policy with

stacked coverage, Auto-Owners did not have to pay *anything* under its umbrella policy unless

Kearney's damages exceeded $72.5-million.  Second, Auto-Owners argued that any payment it

had to make under the Executive Umbrella Policy could be reduced by the amount of the

settlement that Kearney had obtained from Zurich to settle the separate bad faith lawsuit in state

court.  Third, Auto-Owners argued that Kearney's own negligence contributed to his injuries

because he did not wear a seat belt.  Fourth, Auto-Owners disputed the amount of Kearney's

damages, which Kearney's attorney at one point estimated at a "midrange" of about 10.5-

---

[7] Fla. Stat. § 624.155(1)(d).

[8] Doc. 470-1 at 23, Exh. 14.

4

million.[9]

On March 19, 2007, Auto-Owners moved for partial summary judgment, arguing that Zurich's policy was a stacked policy and, as a result, it did not have to pay Kearney unless his damages exceeded $72.5-million.[10]  The Court referred the motions to the Magistrate Judge, who after a hearing found in a Report and Recommendation that the Zurich policy mistakenly contained a stacking provision and that Auto-Owners' Executive Umbrella Policy took effect when Kearney's damages reached $530,000.[11]

On August 7, 2007, the Court adopted the Report and Recommendation.[12]  Since the Court ruled that Zurich's policy did not stack coverage, Auto-Owners' policy would be exposed if Kearney's damages exceeded $530,000.  Without waiting for a jury to determine the amount of Kearney's damages, Auto-Owners unconditionally paid Kearney the $5-million limit on the umbrella policy in early September 2007.[13]

On September 10, 2007, Kearney filed his first motion to recover attorney's fees and costs from Auto-Owners for having to litigate the payment of the $5-million limit under the umbrella policy.[14]  Kearney sought fees beginning on April 28, 2005—the date that Kearney's attorney wrote Auto-Owners' attorney, "We believe that the Auto Owners policy limits should

---

[9] Doc. 473-5.

[10] Doc. 81.

[11] Doc. 118.  Because Auto-Owners had already paid Kearney the $30,000 policy limit of the Recreational Vehicle Policy, the parties agreed to dismiss with prejudice Counts I and III of the Complaint.  On August 3, 2007, the Court dismissed the counts with prejudice. Doc. 138, 139.

[12] Doc. 143.

[13] The exact date of payment appears to be dispute.

[14] Doc. 196.

be paid now"—and ending on September 6, 2007—the date before Auto-Owners unconditionally paid its $5-million policy limit.  Auto-Owners opposed Kearney's motion.[15]

On November 1, 2007, four days before the first trial in this case began,[16] Kearney filed a motion to voluntarily dismiss with prejudice Count II of the Complaint, which alleged failure to pay the $5-million umbrella policy.[17]  However, because Kearney's motion for attorney's fees and taxable costs was still pending before the Court, Kearney did not move to dismiss his claim for attorney's fees and taxable costs.[18]  On November 5, 2007, on the first day of trial, the Court orally granted Kearney's motion to dismiss Count II, except for the claim for attorney's fees and costs.[19]

At the first trial, a jury ultimately determined that Kearney's damages were $60-million. But the Court, through a remittitur and taking into account Kearney's contributory negligence for not wearing a seat belt, reduced the damage award to $30-million.[20]  The case then proceeded to the second phrase, where a second jury would decide whether or not Auto-Owners had acted in bad faith and would, therefore, owe Kearney the full $30-million in damages, not just the $5-million policy limit.

---

[15] Doc. 201. The parties apparently dispute when Auto-Owners actually paid Kearney, when the payment was made unconditionally, and the legal significance under Florida Statute § 627.428 of any conditions originally placed on payment.

[16] The Court bifurcated the case, resulting in two trials: the first to determine Kearney's damages; the second to determine whether Auto-Owners acted in bad faith in handling Kearney's claim.

[17] The Court had already dismissed Counts I and III, concerning the $30,000 Recreational Vehicle Policy. Doc. 139.

[18] Doc. 237.

[19] Doc. 243.

[20] Doc. 311.

On August 8, 2008, the Court denied without prejudice Kearney's motion for attorney's fees and taxable costs.  Because the bad faith claim was still pending, the Court granted Kearney leave to re-file the motion at the conclusion of the second trial on the bad faith claim.[21]

That conclusion came in November 2010.  After a nine-day trial, the jury found that Auto-Owners had not committed bad faith.  On November 20, 2009, the Clerk then entered the only judgment in this case.[22]  The judgment was based on the jury verdict, and was in favor of Auto-Owners and against Kearney.

After the entry of judgment, Auto-Owners moved for attorney's fees for its trial work and part of its pre-trial work under Florida's Offer of Judgment statute, which permits a party to recover attorney's fees after an opposing party unreasonably rejects a good-faith settlement offer.[23]  The Court awarded Auto-Owners attorney's fees for a 64-day period beginning September 18, 2009 and ending at the conclusion of the second trial.[24]

On December 4, 2009, Kearney timely re-filed his motion for attorney's fees and taxable costs as to Counts I and II, which concerned the failure of Auto-Owners to pay the policy limits of its policies to Kearney.  This motion is now before the Court a second time.

## ANALYSIS

**I.    KEARNEY IS ENTITLED TO ATTORNEY'S FEES BECAUSE AUTO-OWNERS FORCED HIM TO BRING A LAWSUIT TO OBTAIN COVERAGE**

To determine whether Kearney is entitled to attorney's fees, the Court applies substantive

---

[21] Doc. 313.

[22] Doc. 590.

[23] Doc. 596.

[24] Doc. 618.

Florida law, rather than federal law, under <u>Erie Railroad Co. v. Thompkins</u>.[25]   Kearney seeks

attorney's fees under Florida Statute § 627.428, a substantive law for <u>Erie</u> purposes.[26]   The

statute states:

> Upon the rendition of a ***judgment or decree*** by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insured, the trial court . . . ***shall*** adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney ***prosecuting the suit*** in which the recovery is had.  (Emphasis added.)

Both Kearney and Auto-Owners agree that Kearney can seek attorney's fees under

Florida Statute § 627.428, even though the Court did not enter "a judgment or decree" against

Auto-Owners.  Although the statute, read literally, only permits a court to award fees if a court

enters a "judgment or decree," the Florida Supreme Court in <u>Wollard v. Lloyd's and Companies</u>

<u>of Lloyd's</u> held that the statute applies where an insurance company settles a case before the

court can enter judgment.[27]   Settling an insurance claim before judgment is "the functional

equivalent" of a judgment or decree against the insurance company.[28]   In this case, Auto-Owners

did not settle Kearney's claim after the Court ruled against its motion for partial summary

judgment.  Instead, Auto-Owners unconditionally paid Kearney the limits of the Executive

Umbrella Policy.  Under <u>Wollard</u>, Auto-Owner's unconditional $5-million payment was the

"functional equivalent" of a judgment against it.  Therefore § 627.428 applies.

But a different Florida statute limits the reach of § 627.428, and Auto-Owners argues that

---

[25] 304 U.S. 64 (1938).

[26] <u>All Underwriters v. Weisberg</u>, 222 F.3d 1309, 1312 (11th Cir. 2000) ("[W]e hold that Fla. Stat. § 627.428 is substantive law for <u>Erie</u> purposes.").

[27] 439 So. 2d 217 (Fla. 1983).

[28] 439 So. 2d 217, 218 (Fla. 1983).

it prevents Kearney from obtaining attorney's fees.  Florida Statute § 627.727(8) states that:

> The provisions of s. 627.428 do not apply to any action brought pursuant to this section against the uninsured motorist insurer *unless* there is a dispute over whether the policy provides coverage for an uninsured motorist proven to be liable for the accident.[29]

In order for § 627.727(8) to eliminate an insured's right to attorney's fees, two conditions must be met.  First, the lawsuit must be brought pursuant to § 627.727 and §627.428.[30]  Second, the dispute must be over "whether the policy provides coverage for an uninsured motorist proven to be liable for the accident."

### A.     Auto-Owners Disputed Coverage, Not Merely Damages and Set-Offs

Because § 627.727 does not define the term "coverage," the Court must give the word its ordinary meaning.  Black's Law Dictionary defines "coverage" to mean the "inclusion of a risk under an insurance policy."[31]  Other courts have said that "the term coverage has a narrow and precise meaning: 'the assumption of risk of occurrence of the event insured against before its occurrence.'"[32]  Coverage disputes, therefore, are disputes about risk—and what kind of risk an insurance company took on in exchange for a premium.  In this case, Auto-Owners, through its umbrella policy, only assumed the risk that it would have to pay Kearney if his damages

---

[29] Fla. Stat. § 627.727(8) (emphasis added).

[30] The parties do not dispute that Kearney's lawsuit was brought "pursuant to" the uninsured motorist section of the Florida Insurance Code, although the Court notes that Counts I and II are essentially breach of contract claims, not claims alleging a violation of Florida statutes.  However, in this context, Florida courts have interpreted the meaning of the phrase "pursuant to" broadly to mean "as a consequence of [a] statute" or in agreement or conformity with a statute.  Lachance v. Sagumeri, 537 So. 2d 665, 666 (Fla. 4th DCA 1989) (internal citations and quotations omitted).  Therefore, Kearney has met the first requirement under § 627.428 to obtain attorney's fees.

[31] Blacks' Law Dictionary 372 (7th ed. 1999).

[32] Farmes Ins. Co. of Washington v. Frederickson,914 P.2d 138, 140 (Wash. App. Div. 3 1996).  See also Nat. Union Fire Ins. Co. v. Reynolds, 889 P.2d 67, 69 n.3 (Hawai'i App. 1995); In re Jt. E. & S. Dist. Asbestos Lit., 993 F.2d 313, 314 (2d Cir. 1993).

exceeded $530,000.[33]  Auto-Owners' umbrella policy declarations specifically list the primary

insurance policies that Kearney would first have to exhaust before Auto-Owners' umbrella

policy covered any risk.  Hence, the dispute over the stacking clause in the Zurich primary policy

was, in essence, a dispute over how much risk Auto-Owners had assumed: the risk that Kearney

would suffer damages exceeding $530,000, or the risk that Kearney would suffer damages

exceeding $72.5-million.

 In State Farm Mutual Automobile Insurance Company v. Lynch, the Third District Court

of Appeal suggested that stacking disputes are quintessential controversies over coverage.[34]  In

Lynch, the appeals court awarded attorney's fees under § 627.428 when State Farm denied that

the plaintiff's three separate UM policies could be stacked.[35]  By denying stacked coverage, the

court found that "State Farm in effect denied ***coverage*** under two of the plaintiff's three

policies."[36]  Although the court did not elaborate on its conclusion, the ruling underscores that a

dispute over stacking is a dispute over coverage, rather than a dispute about whether an incident

*triggers* coverage.  Auto-Owners argues that Lynch does not apply because it involved stacking

three separate insurance policies, where this case involves stacking the coverage limits *within*

---

[33] Doc. 2-1 at 10, Doc. 2-2 at 3.

[34] 661 So. 2d 1227, 1230 (Fla. 3d DCA 1995).  The court said:

 The plaintiff paid State Farm for three separate policies that provided $100,000 in uninsured/underinsured motorist coverage for each policy.  State Farm argued throughout this litigation that under Montana law, these policies could not be stacked, and therefore, the plaintiff was only entitled to $100,000 in coverage.  **By doing so, State Farm in effect denied coverage under two of the plaintiff's three policies.**  Accordingly, we find that the plaintiff is entitled to attorney's fees pursuant to section 627.428, Florida Statutes (1989).

Id. (internal citations omitted) (emphasis added).

[35] Id.

[36] Id.  (emphasis added).

one insurance policy.  While <u>Lynch</u> is not factually identical to this case, the factual differences between the cases do not alter how the legal principle in <u>Lynch</u> applies to this case.  In <u>Lynch</u>, the stacking dispute resulted in State Farm denying the plaintiff coverage because State Farm denied that it had assumed the risk for damages that would exceed the limit of a single insurance policy.  Here, the stacking dispute resulted in Kearney being denied coverage because Auto-Owners denied that it had assumed the risk of damages below $72.5-million.  Both disputes involve how much risk the insurer agreed to take on.[37]

Auto-Owners claims that its dispute did not deal with "coverage," but with liability, damages, and its right to "set off" its liability.  But simply calling a legal dispute by a different name does not change the underlying nature of the dispute.  A McDonald's hamburger is still a McDonald's hamburger even if you call it a sirloin sandwich.  Auto-Owners did argue that the Zurich recovery should be set off against Kearney's damages.  But as a legal matter, the stacking issue did not involve a "set off."[38]  In a "set off" dispute, the insurer first acknowledges coverage, but argues that a collateral source should reduce how much money it must pay.  The argument is based on equity, to prevent an insured from reaping a double recovery.[39]  In a "coverage" dispute, the insurer never admits that it accepted the risk in the first place.  The coverage argument is based on contract law.

---

[37] The Court agrees with Auto-Owners that it should not rely on <u>Baker v. United Services Automobile Association</u>, 661 So. 2d 128, 132-33 (Fla. 1st DCA 1995), which Kearney cites for its "holding."  The District Court of Appeal did not make any holding on the attorney's fee motion in <u>Baker</u>, which was filed for the first time in the appeals court, as permitted by § 627.428.  The appeals court remanded the case to the trial court for different reasons and simply referred the attorney's fee motion to the trial court.  <u>Id.</u>

[38] Doc. 81 ("[T]he Defendant is entitled to a set off for all primary insurance amounts available under the stacked Uninsured Motorist policy of insurance issued by Zurich. . . .").

[39] <u>See</u> <u>Acadia Partners, L.P. v. Tompkins</u>, 759 So. 2d 732, 739 (Fla. 5th DCA 2000).

11

Auto-Owners also argues that the lawsuit did not involve a "coverage" dispute because it never denied coverage.  Auto-Owners claims it simply *delayed* making a coverage decision, one way or the other, until the Court ruled on the stacking issue in its motion for partial summary judgment.  At some point, however, a delay in granting coverage effectively becomes a denial of coverage.  As the Second District Court of Appeal has held, "[A]n insurer may not simply sit back and ignore its insured's demand for additional payments and then claim that its failure to respond does not operate as a denial of coverage."[40]  Other attorney's fees cases under § 627.428 make the same point.[41]  In fact, Auto-Owners failure to pay Kearney's claim in response to a Civil Remedy Notice arguably constitutes an actual denial of coverage.[42]  If that is not an actual

---

[40] Clifton v. United Cas. Ins. Co. of Am., 31 So. 3d 826, 832 (Fla. 2d DCA 2010).  In Clifton, United Casualty Insurance argued that it had not denied coverage because it ultimately paid Clifton a $18,744 appraisal award after he sued.  Id. at 827-28.  The Second District Court of Appeal rejected the argument.  "When an insurer is aware that an insured disputes the settlement of a claim and the insurer fails to respond in any fashion to the insured's demands for further action, that failure has the legal effect of denying coverage."  Id. at 832.

[41]  The Second, Third, and Fourth District Courts of Appeals have all reached this conclusion:
    ¶ The Second District Court of Appeal has reiterated the same point, in different contexts, numerous times. For instance, in Sanchez v. American Ambassador Casualty Co., the insurance company refused to respond to the insured's letter demanding payment.  559 So. 2d 344 (Fla. 2d DCA 1990).  After the insured filed a petition to compel arbitration, the company wrote a "carefully crafted letter" that did not explicitly admit or deny coverage. The Court found that "although American Ambassador did not formally reject Sanchez's claim, its failure to respond to the demand for arbitration and motions to dismiss had the effect of denying coverage."  Id. at 346.
    ¶ The Third District Court of Appeal in Paz v. Allstate Insurance Co. also found that an insurance company does not have to actually deny coverage to effectively deny coverage.  478 So. 2d 849, 850 (Fla. 3d DCA 1985)
    ¶ The Fourth District Court of Appeal in Pawtucket Mutual Insurance Company v. Manganelli, found that an insurance company's refusal to arbitrate a dispute amounted to a denial of coverage that warranted an attorney's fee award.  3 So. 2d 421, 423 (Fla. 4th DCA 2009).  In Leaf v. State Farm Mutual Automobile Insurance Co., an earlier case, the Fourth District also awarded attorney's fees where an insurer refused to arbitrate.  The Court held that the limiting provision of § 627.727(8) did not apply and, therefore, did not exclude an attorney's fee award under § 627.428.  544 So.2d 1049, 1050 (Fla. 4th DCA 1989).
    See also First Floridian Auto & Home Ins. Co. v. Myrick, 969 So.2d 1121 (Fla. 2d DCA 2007); Lewis v. Universal Prop. & Cas. Ins. Co., 13 So.3d 1079, 1081 (Fla. 4th DCA 2009).; Phillips v. Certain Underwriters at Lloyd's London, No. 6:04-cv-1430-Orl-DAB, 2005 WL 5926972, at * 4 (M.D. Fla. Oct. 21, 2005) ("[T]he claim was, in part, denied by the Defendant's action in continuing the litigation.").

[42]  Doc. 470-1 at 23, Exh. 14.  Auto-Owners response to the Civil Remedy Notice was "carefully crafted" like the insurer's letter in Sanchez.  449 So. 2d at 346.  The letter identified as an "issue" that Kearney had already been fully compensated for his losses, without explicitly denying his claim on that basis.

denial, then Auto-Owners response to the Civil Remedy Notice, its defense of Kearney's lawsuit, and its motion for partial summary judgment effectively denied Kearney coverage.

Auto-Owners also argues that it never denied coverage because it never denied that its policy applied to Kearney. It is true that Auto-Owners, in its Answer to the Complaint, admitted that Kearney was an insured under the Executive Umbrella Policy.[43] But this acknowledgment does not constitute an admission of coverage, or prove that no denial occurred. An insurer can deny coverage for many reasons; the fact that Auto-Owners did not rely on every possible reason for its position does not change the fact that it did not pay Kearney any money under the umbrella policy until 2007.

### B.       Because Kearney Was Forced to Bring a Lawsuit to Obtain Coverage Limits, Florida Law Entitles Him to Attorney's Fees for the Coverage Dispute

Florida Statute 627.428 commands that a trial or appellate court *shall* award an insured reasonable attorney's fees when she prevails in a lawsuit against an insurance company. Read literally, the statute *requires* a court to award attorney's fees whenever an insured prevails, regardless of the reason. In fact, as the Florida Supreme Court said in <u>Insurance Company of North America v. Lexow</u>, "If the dispute is within the scope of section 627.428 and the insurer loses, the insurer is ***always*** obligated for attorney's fees."[44] In 2000 in <u>Ivey v Allstate Insurance Co.</u>, the Supreme Court reiterated this point: "Florida law is clear that in 'any dispute' which leads to judgment against the insurer and in favor of the insured, attorney's fees shall be awarded to the insured."[45]

---

[43] Doc. 3 ¶ 21-22.

[44] 602 So. 2d 528, 531 (Fla. 1992) (emphasis added).

[45] 774 So. 2d 679, 684 (Fla. 2000).

Despite this unambiguous language, courts have not awarded attorney's fees under §
627.428 where the award does not further the punitive purposes of the statute.  Although the
statute serves both a compensatory purpose, "to reimburse successful policy holders when they
are compelled to sue to enforce their policies,"[46] and a punitive purpose,[47] to "discourage the
contesting of coverage by insurers,"[48] courts typically look for some wrongdoing that compelled
the insured to go to court to obtain coverage.   "The general rule is to the effect that an insurance
company must pay those attorney's fees if the company wrongfully caused the parties to resort to
litigation by not resolving the conflict when it was reasonably within the company's power to do
so."[49]  In some cases, courts have found no wrongful conduct—and awarded no attorney's
fees—where the dispute "involved the resolution of factual and legal issues which the insurance
company could not reasonably be expected to resolve on its own. . . ."[50]  For instance, the Florida
Supreme Court in a 1979 case, New York Life Insurance Co. v. Shuster, did not award attorney's
fees against an insurance company that withheld life insurance funds after the policy holder's
daughter claimed a change of beneficiary form had been forged.[51]  The Court found that the
insurer did not act wrongfully in not paying the policy with the forgery issue unresolved.  In
Crotts v. Bankers & Shippers Insurance Company of New York, the Second District Court of

---

[46] Zac Smith & Co., Inc. v. Moonspinner Condo. Ass'n, Inc., 534 So. 2d 739, 743 (Fla. 1st DCA 1988).

[47] Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1266 (11th Cir. 2000) (discussing the dual purposes of §
627.428 as factor in whether a claim for statutory attorney's fees can be combined together in a class action lawsuit
to reach the amount in controversy jurisdictional threshold).

[48] Lexow, 602 So. 2d at 531.

[49] Crotts v. Bankers & Shippers Ins. Co. of N.Y., 476 So. 2d 1357, 1358 (Fla. 2d DCA 1985).

[50] Id. at 1359.

[51] 373 So. 2d 916, 918 (Fla. 1979).

Appeal awarded no attorney's fees in a case where the insurance company denied disability

coverage because it was unclear if the insured validly assigned his coverage to the hospital a day

after being transported to the hospital with severe injuries from a motorcycle accident.[52]  In other

cases, courts refused to award attorney's fees where the insurance customer caused the insurance

company to deny coverage, by, for example, providing erroneous information to the insurance

company,[53] or failing to promptly correct inaccurate medical records given to the insurance

company.[54]

Auto-Owners argues that "the standard for awarding [attorney's] fees is tantamount to a

bad faith denial of coverage."  And because the jury in this case found that Auto-Owners had not

committed bad faith, Auto-Owners argues that the Court should not find that Auto-Owners acted

wrongfully in denying coverage and should not award attorney's fees.  But this argument fails

because Florida courts have made clear that the standard for awarding attorney's fees under §

627.428 is *not* tantamount to a bad faith standard.  As the Florida Supreme Court said in Lexow,

---

[52] Crotts, 476 So. 2d at 1358.  Two other cases make similar points:
In GEICO v. Battaglia, the Fifth District Court of Appeal found that a plaintiff was not entitled to attorney's fees where GEICO filed—and lost—a declaratory judgment action to resolve whether it had to pay an uninsured motorist's claim.  503 So. 2d 358, 359-60 (Fla. 5th DCA 1987).  The motorist who injured the plaintiff had insurance.  But because the motorist disappeared twice, his insurance company denied coverage twice. Each denial made him an uninsured motorist, triggering GEICO's obligation to pay the plaintiff's claim under his UM policy. The court found: "When the claim is one that the carrier reasonably can expect to be resolved by a court, rather than by itself, then section 627.428 does not generate a punitive fee."  Id. at 360.
Likewise, in Mohnkern v. Professional Ins. Co., the U.S. Court of Appeals for the Sixth Circuit, interpreting Florida Statute § 627.428, found that the statute did not require an attorney's fees award where an insurance company failed to pay a claim because a district court had ordered the insurer to place the funds in an escrow account.  542 F.3d 157, 161-62 (6th Cir. 2008).

[53] Lib. Nat'l Life Ins. Co. v. Bailey, 944 So. 2d 1028, 1029 (Fla. 2d DCA 2006).

[54] Time Ins. Co. v. Arnold, 319 So. 2d 638 (Fla. 1st DCA 1975).

15

the insurer's "good faith in bringing this suit is irrelevant" to determining attorney's fees.[55] The two standards may sound the same and employ similar language, but the standards are, in fact, different. If the standards were identical, the Legislature would not have written different attorney's fees provisions into both § 627.428 and, later, into the bad-faith statute in § 624.155(4).[56] Therefore, the jury's determination that Auto-Owners did not commit bad faith does not prevent this Court from awarding Kearney attorney's fees.

To award Kearney attorney's fees for the coverage dispute, the Court must decide that Auto-Owners wrongfully caused Kearney to resort to litigation by failing to resolve a coverage dispute when "it was reasonably within the company's power to do so."[57] Unlike other courts that have looked exclusively at the lack of an insurer's wrongful conduct in declining to award attorney's fees, the Court must consider the dual purposes of § 627.428. As the Eleventh Circuit has said, the Legislature did not create the attorney's fees statute in § 627.428 solely to punish insurance companies for wrongful conduct.[58] The statute also exists to compensate insurance customers who go to court to get a claim paid. Therefore, even if the degree of an insurance company's wrongful conduct is modest, the need to compensate an insurer may tip the balance in favor of an attorney's fees award. Considering both these factors adheres both to the statute's

---

[55] Lexow, 602 So. 2d at 531. As this Court said in Morrison Grain Co., Inc. v. Utica Mutual Insurance Co., "[T]fact that the insurer's refusal to pay the amount owed by it under the terms of its contract of insurance was in good faith and on reasonable grounds does not relieve it from the liability for payment of attorneys' fee." 446 F. Supp. 415, 422 (M.D. Fla. 1977).
   See also United Auto Ins. Co. v. Zulma, 661 So. 2d 947, 948-49 (Fla. 4th DCA 1995) ("An insurer's good faith in bringing suit is not a factor" in determining entitlement to attorney's fees.).

[56] The attorney's fees provision in § 627.428 has been part of Florida statutes since at least 1967; the Legislature created the bad-faith statute, including its attorney's fee provision, in 1982. See Rowland v. Safeco Ins. of Am., 634 F. Supp. 613, 614 (M.D. Fla. 1986).

[57] Crotts v. Bankers & Shippers Ins. Co. of N.Y., 476 So. 2d 1357, 1358 (Fla. 2d DCA 1985).

[58] Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1266 (11th Cir. 2000).

purpose and to the mandatory language of the state, which says that a trial court *shall* award attorney's fees.

In this case, Kearney seeks attorney's fees beginning on April 28, 2005, which is the date that Kearney's lawyer told Auto-Owners: "We believe that the Auto Owners policy limits should be paid now."[59]  From this date forward, Kearney and Zurich agreed that the Zurich policy did not stack coverage to $72.5-million.  While Auto-Owners may have been suspicious about this concession and may have feared that Kearney and Zurich were setting it up for a bad faith claim, Auto-Owners also had in its possession the information it needed to determine, on its own, that Zurich's position was legitimate.  Auto-Owners knew that it had never issued a $5-million umbrella policy to cover a $72.5-million primary policy.  No market existed for such an incredible policy.  As Kearney's attorney said at trial, "It would be like buying an umbrella to cover an elephant.  It makes no sense.  And the fact of the matter is nobody believed it.  If they believed that there was this kind of coverage, they would have never set their reserves at $2-million."[60]

Auto-Owners countered that it had a fiduciary duty to withhold payment until this Court could determine whether or not the Zurich policy was stacked.  Auto-Owners could not just take Kearney's word for it, especially given Kearney's self-interest.  Auto-Owners also argued that Zurich's policy was, in fact, issued as stacked policy, regardless of whether the parties agreed it had been issued this way by mistake.  Until the contract was reformed, the policy said what it said.

---

[59] Doc. 598-2.

[60] Nov. 19, 2009 Tr. at 98 (transcript of closing argument).

While Auto-Owners' arguments convinced the jury that Auto-Owners did not act in bad faith, the arguments do not resolve the narrower issue before the Court on attorney's fees. The Court must decide whether Auto-Owners reasonably could have decided this coverage dispute on its own. In ruling on this motion, the Court does not decide whether Auto-Owners *should* have resolved the coverage dispute on its own, or whether it was bad faith not to do so. Auto-Owners certainly could have decided this issue on its own after April 28, 2005 without forcing Kearney to go to court. Unlike other cases where courts have denied attorney's fees, Kearney did not withhold information that prevented Auto-Owners from acting.[61] Nor, as in Time Insurance Company, did Kearney give Auto-Owners erroneous information.[62] Moreover, no court order prevented Auto-Owners from resolving the dispute on its own, as in Mohnkern.[63] While Auto-Owners may have preferred for a court to resolve the stacking issue, it did not need a court to referee this dispute.[64]

Awarding Kearney's attorney's fees for bringing the coverage dispute to court also serves the statute's compensatory purpose "to reimburse successful policy holders when they are compelled to sue to enforce their policies."[65] Kearney was forced to sue Auto-Owners; Auto-Owners did not bring a declaratory judgment action. Therefore, an award of fees compensates

---

[61] Lib. Nat'l Life Ins. Co. v. Bailey, 944 So. 2d 1028, 1029 (Fla. 2d DCA 2006).

[62] Time Ins. Co. v. Arnold, 319 So. 2d 638 (Fla. 1st DCA 1975).

[63] Mohnkern v. Prof'l Ins. Co., 542 F.3d 157, 161-62 (6th Cir. 2008).

[64] The Court recognizes that other courts have declined to award attorney's fees where an insurer withheld coverage to resolve complex legal issues, such as the forgery issue in Shuster and the validity of the emergency-room assignment in Crotts. But those courts placed exclusive emphasis on the punitive nature of the statute. Moreover, each case merits a fact-specific analysis.

[65] Zac Smith & Co., Inc. v. Moonspinner Condo. Ass'n, Inc., 534 So. 2d 739, 743 (Fla. 1st DCA 1988).

Kearney for his efforts to collect on the policies.

### C.   Kearney Is Not Entitled to Attorney's Fees for Pre-Suit Work

The Court declines to award attorney's fees for work done before the Complaint was drafted and filed.  Kearney's request for attorney's fees for pre-suit legal work stretches Florida Statute § 627.428 too far from its actual language.  The statute provides for awarding reasonable fees only for an attorney "prosecuting the suit in which the recovery is had."  The Legislature chose the phrase "prosecuting the suit" deliberately, and the phrase limits what fees can be recovered.  First, the statute only authorizes fees for handling a "suit," not for handling a client's needs outside of litigation.  Second, the word "prosecute" also limits fees to work on a lawsuit. "Prosecute" means "to commence and carry out a legal action."[66]  The term specifically excludes pre-suit work.  As the U.S. District Court for the Southern District of Florida found: "The narrow sense of the statute's use of the phrase 'prosecuting the suit' should only include those fees incurred after the Plaintiff's formal initiation of their litigation and no pre-suit activities."[67]

The Court recognizes that other courts have reached a different conclusion on this issue. In <u>Wendel v. USAA Casualty Insurance Company</u>, another judge of the Middle District of Florida acknowledged that the plain language of § 627.428 precluded pre-suit attorney's fees, but the district court found that reading the statute to preclude pre-suit fees "would defeat its goal."[68]  Using similar reasoning, the Fourth District Court of Appeal applied § 627.428 to award

---

[66] <u>Blacks' Law Dictionary</u> 1237 (7th ed. 1999).

[67] <u>Dunworth v. Tower Hill Preferred Ins. Co.</u>, No. 05-14019-CIV, 2006 WL 889424, at *2-*3 (S.D. Fla. Feb. 14, 2006) (holding that § 627.428 does entitle an insurer to pre-suit attorney's fees) (Report and Recommendation of Magistrate Judge, adopted on March 2, 2006 by District Court).

[68] No. 8:08-cv-536-T-23-EAJ (M.D. Fla. July 8, 2009) (Merryday, J., adopting Report and Recommendation of Magistrate Judge Elizabeth A. Jenkins) (internal citations and quotations omitted).  <u>See also</u> <u>U.S. Fid. & Guar. Co. v. Rosado</u>, 606 So. 2d 628, 629 (Fla. 3d DCA 1992) (remanding attorney's fees award to

an insured attorney's fees for arbitration that preceded a lawsuit.[69]  Because the Florida Supreme

Court has not clearly spoken on this issue, however, we are not bound by these decisions, which

the Court does not find persuasive.  If the Legislature had wanted to award pre-suit attorney's

fees, it would not have written a statute that limits compensate to  "prosecuting a suit."  Because

§ 627.428 deviates from the common law, the canons of statutory construction require the Court

to construe the statute narrowly.[70]  Read narrowly, the statute does not authorize an attorney's

fee award work not spent "prosecuting the suit."[71]

> ### D. The Court Will Not Grant Kearney a Stay Pending Appeal to Determine the Amount of Reasonable Attorney's Fees

Kearney asks the Court to stay a determination of the amount of reasonable attorney's

fees until the U.S. Court of Appeal for the Eleventh Circuit decides Kearney's appeal of the

judgment in the bad faith trial.  Auto-Owners opposes this stay.  The Court finds no good cause

to delay the resolution of this matter any longer.  Even if Kearney prevails before the Eleventh

Circuit, a ruling would not effect Kearney's entitlement to attorney's fees on the coverage

dispute as a matter of law.  In addition, the Court can address any legitimate concerns that

Kearney has about the attorney-client privilege when it reviews Kearney's request for a specific

---

determine if insurance company's unreasonable conduct necessitated pre-suit work).

[69] "[W]e see no rationale for not extending section 627.428(1) to cover an award of attorney's fees associated with an expensive and drawn out appraisal. . . ."  Travelers Indem. Ins. Co. of Ill. v. Meadows MRI, LLP, 900 So. 2d 676, 679-80 (Fla. 4th DCA 2005).  See Fewox v. McMerit Const. Co., 556 So. 2d 419, 423-24 (Fla. 2d DCA 1989) ("The legislative policy underlying section 627.428 is served by requiring insurers to pay attorney's fees to a prevailing insured or beneficiary, regardless of whether the insurers contest coverage through arbitration or in the trial courts.").

[70] Pepper's Steel & Alloys, Inc. v. United States, 850 So. 2d 462, 465 (Fla. 2003) ("Section 627.428 must be strictly construed because an award of attorneys' fees is in derogation of common law.").

[71] Even if the statute authorized such an award, the Court would not exercise its discretion to award Kearney pre-suit attorney's fees.  Kearney has not met his burden to show that Auto-Owners' conduct was not so unreasonable to merit pre-suit fees.

amount of attorney's fees.

## CONCLUSION

Plaintiff Clayton Kearney's motion for attorney's fees (Doc. 598) is **GRANTED**.

It is **ORDERED** that Plaintiff Clayton Kearney is entitled to attorney's fees from

Defendant Auto-Owners Insurance Company, pursuant to Florida Statute § 627.428, solely to

resolve the coverage dispute at issue in this case—specifically, the stacking issue resolved by

summary judgment.  Kearney is not entitled to receive attorney's fees to resolve the allegations

of Auto-Owners' bad faith, the issue of Auto-Owners' entitlement to a set-off, and any dispute

about the amount of Kearney's damages.  Kearney may apply for attorney's fees beginning with

the drafting of the Complaint and ending when Auto-Owners unconditionally paid the Kearney

$5-million limit of the Executive Umbrella Policy in September 2007.

Kearney must file a supplemental motion by **August 20, 2010** seeking an itemized

amount of attorney's fees.  If the fee request is voluminous, Kearney should submit a summary

of the fee request in chart form and should also submit charts itemizing each fee entry sought.[72]

The Court will rule in a separate order on Kearney's request, in this same motion, for

taxable costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920.

**IT IS SO ORDERED**.

*Done on August 4, 2010.*

SUSAN C. BUCKLEW
United States District Judge

---

[72]  To facilitate the Court's review, the Court instructs Kearney to prepare itemized time entries and any summaries in a chart format using Microsoft Excel.  Counsel should e-mail a copy of the filed chart to the Court's chambers at Chambers_FLMD_Bucklew@flmd.uscourts.gov.  The identical chart or charts must also be filed with the Court.  The charts should not contain any formulas or hidden codes, or be locked.  Kearney should also provide a courtesy copy of any charts to opposing counsel.  When responding to Kearney's motion, Auto-Owners should follow the same procedure.