UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAYTON KEARNEY,

    Plaintiff,

v.                                                        Case No.: 8:06-cv-00595-T-24-TGW

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.

_____/

**ORDER DENYING
TAXABLE COSTS**

The Court now considers Plaintiff Clayton Kearney's motion for taxable costs (Doc. 598), which Defendant Auto-Owners Insurance Company opposes. (Doc. 604.) In a previous order, the Court ruled on Kearney's request in the same motion for attorney's fees.

**BACKGROUND**

On July 27, 2002, Plaintiff Clayton Kearney, the 17-year-old son of developer Charles Wesley "Bing" Kearney Jr., was severely injured in an automobile accident. At the time of the accident, Clayton Kearney had been a passenger in a car driven by an uninsured motorist. Two separate insurance companies provided coverage to Clayton Kearney through three separate policies issued to his father and his father's business, Kearney Development Company, Incorporated.[1] The three insurance policies were:

---

[1] Zurich issued a primary policy to Kearney Development Company, Inc., which named Clayton Kearney as an insured. (Doc. 48, Exh. A-1, A-2.) Auto-Owners also issued two policies to Plaintiff's father, Bing Kearney, that provided coverage to his son. (Doc. 2, Exh. A-B.)

> (1) A primary policy issued by Zurich American Insurance Company ("Zurich"), whose $500,000 per incident coverage limit became a subject of a stacking dispute;
>
> (2) A primary policy issued by Defendant Auto-Owners Insurance Company, known as the "Recreational Vehicle Policy," which had a $30,000 coverage limit; and
>
> (3) An umbrella policy issued by Auto-Owners, known as the "Executive Umbrella Policy," that had a $5-million coverage limit. Auto-Owners only had to pay the umbrella policy if Kearney's damages exceeded the limits of the first two primary policies.

The primary policy issued by Zurich to Kearney Development Company, Inc. covered 145 vehicles and limited uninsured motorist insurance coverage, or "UM" coverage, to $500,000 per incident. When Kearney Development bought the policy, it did not pay for stacked coverage nor did it intend to stack coverage such that it could multiply the $500,000 per incident limit by 145 vehicles for a total per incident coverage limit of $72.5 million.[2] However, by mistake, Zurich issued the primary policy with a stacking provision, creating on paper a $72.5-million per incident coverage limit.

When Zurich refused to pay Kearney's claim, Kearney sued Zurich in state court, alleging failure to pay insurance benefits and bad faith in handling his claim.[3] Kearney and Zurich ultimately settled the lawsuit, and Zurich paid Kearney the $500,000 limit of its primary

---

[2] This is true even though Kearney initially took the opposite position in state court litigation against Zurich.

[3] The case, Clayton Kearney v. Anthony David Sorrentino & Zurich American Insurance Company, Case No. 04-CA-003457, was filed in the 13th Judicial Circuit in Hillsborough County. (Doc. 48-3.)

policy. Zurich and Kearney acknowledged that Zurich issued the primary policy as a stacking policy by mutual mistake, and Zurich and Kearney also agreed that they did not intend to stack coverage to create a $72.5-million per incident policy limit.[4]  The parties intended to create a $500,000 per incident limit.

After the settlement with Zurich, in which Zurich and Kearney agreed they had not intended the Zurich policy to be issued as a stacking policy, Kearney turned to Auto-Owners for coverage under the $5-million umbrella policy.  In a letter dated April 28, 2005, Kearney's attorney wrote: "We believe that the Auto Owners policy limits should be paid now."[5] Kearney's attorney did not doubt that Kearney's economic losses from the accident exceeded $5-million.  Because Kearney stood, before the auto accident, to take over his father's company, Kearney's attorney wrote that his "future lost earnings in this case are the largest I have ever seen."[6]

When Auto-Owners failed to pay the $5-million, Kearney filed a Civil Remedy Notice with the Florida Department of Financial Services on November 4, 2005.  Under Florida law, the Civil Remedy Notice gave Auto-Owners 60 days to pay Kearney's claim to avoid extra liability, above the $5-million policy limit, for handling the claim in bad-faith.[7]  On January 9, 2006, Auto-Owners responded to the Civil Remedy Notice and offered four reasons why Auto-Owners

---

[4] Doc. 118 at 10; Sealed Doc. S-3 (settlement agreement and release between Kearney and Zurich filed under seal).

[5] Doc. 598-2.

[6] Id.

[7] Fla. Stat. § 624.155(1)(d).

would not pay Kearney's claim.[8] Among the reasons for denying the claim, Auto-Owners said Kearney had already been fully compensated for his damages by the Zurich settlement.

On February 24, 2006, Clayton Kearney filed a lawsuit in state court against Auto-Owners. The lawsuit contained four counts. Counts I and II alleged failure to pay insurance benefits under, respectively, the $30,000 Recreational Vehicle Policy and the $5-million Executive Umbrella Policy. Counts III and IV alleged bad faith handling of Kearney's claims under these two policies. Auto-Owners removed the case to federal court on April 7, 2006.

Broadly speaking, Auto-Owners' defense consisted of four arguments. First, Auto-Owners argued that because Zurich American Insurance had issued a primary policy with stacked coverage, Auto-Owners did not have to pay *anything* under its umbrella policy unless Kearney's damages exceeded $72.5-million. Second, Auto-Owners argued that any payment it had to make under the Executive Umbrella Policy could be reduced by the amount of the settlement that Kearney had obtained from Zurich to settle the separate bad faith lawsuit in state court. Third, Auto-Owners argued that Kearney's own negligence contributed to his injuries because he did not wear a seat belt. Fourth, Auto-Owners disputed the amount of Kearney's damages, which Kearney's attorney at one point estimated at a "midrange" of about 10.5-million.[9]

On March 19, 2007, Auto-Owners moved for partial summary judgment, arguing that Zurich's policy was a stacked policy and, as a result, it did not have to pay Kearney unless his

---

[8] Doc. 470-1 at 23, Exh. 14.

[9] Doc. 473-5.

damages exceeded $72.5-million.[10] The Court referred the motions to the Magistrate Judge, who after a hearing found in a Report and Recommendation that the Zurich policy mistakenly contained a stacking provision and that Auto-Owners' Executive Umbrella Policy took effect when Kearney's damages reached $530,000.[11]

On August 7, 2007, the Court adopted the Report and Recommendation.[12] Since the Court ruled that Zurich's policy did not stack coverage, Auto-Owners' policy would be exposed if Kearney's damages exceeded $530,000. Without waiting for a jury to determine the amount of Kearney's damages, Auto-Owners unconditionally paid Kearney the $5-million limit on the umbrella policy in early September 2007.[13]

On September 10, 2007, Kearney filed his first motion to recover attorney's fees and costs from Auto-Owners for having to litigate the payment of the $5-million limit under the umbrella policy.[14] Kearney sought fees beginning on April 28, 2005—the date that Kearney's attorney wrote Auto-Owners' attorney, "We believe that the Auto Owners policy limits should be paid now"—and ending on September 6, 2007—the date before Auto-Owners unconditionally paid its $5-million policy limit. Auto-Owners opposed Kearney's motion.[15]

---

[10] Doc. 81.

[11] Doc. 118. Because Auto-Owners had already paid Kearney the $30,000 policy limit of the Recreational Vehicle Policy, the parties agreed to dismiss with prejudice Counts I and III of the Complaint. On August 3, 2007, the Court dismissed the counts with prejudice. Doc. 138, 139.

[12] Doc. 143.

[13] The exact date of payment appears to be dispute.

[14] Doc. 196.

[15] Doc. 201. The parties apparently dispute when Auto-Owners actually paid Kearney, when the payment was made unconditionally, and the legal significance under Florida Statute § 627.428 of any conditions originally placed on payment.

On November 1, 2007, four days before the first trial in this case began,[16] Kearney filed a motion to voluntarily dismiss with prejudice Count II of the Complaint, which alleged failure to pay the $5-million umbrella policy.[17] However, because Kearney's motion for attorney's fees and taxable costs was still pending before the Court, Kearney did not move to dismiss his claim for attorney's fees and taxable costs.[18] On November 5, 2007, on the first day of trial, the Court orally granted Kearney's motion to dismiss Count II, except for the claim for attorney's fees and costs.[19]

At the first trial, a jury ultimately determined that Kearney's damages were $60-million. But the Court, through a remittitur and taking into account Kearney's contributory negligence for not wearing a seat belt, reduced the damage award to $30-million.[20] The case then proceeded to the second phrase, where a second jury would decide whether or not Auto-Owners had acted in bad faith and would, therefore, owe Kearney the full $30-million in damages, not just the $5-million policy limit.

On August 8, 2008, the Court denied without prejudice Kearney's motion for attorney's fees and taxable costs. Because the bad faith claim was still pending, the Court granted Kearney leave to re-file the motion at the conclusion of the second trial on the bad faith claim.[21]

---

[16] The Court bifurcated the case, resulting in two trials: the first to determine Kearney's damages; the second to determine whether Auto-Owners acted in bad faith in handling Kearney's claim.

[17] The Court had already dismissed Counts I and III, concerning the $30,000 Recreational Vehicle Policy. Doc. 139.

[18] Doc. 237.

[19] Doc. 243.

[20] Doc. 311.

[21] Doc. 313.

That conclusion came in November 2010.  After a nine-day trial, the jury found that Auto-Owners had not committed bad faith.  On November 20, 2009, the Clerk then entered the only judgment in this case.[22]  The judgment was based on the jury verdict, and was in favor of Auto-Owners and against Kearney.

After the entry of judgment, Auto-Owners moved for attorney's fees for its trial work and part of its pre-trial work under Florida's Offer of Judgment statute, which permits a party to recover attorney's fees after an opposing party unreasonably rejects a good-faith settlement offer.[23]  The Court awarded Auto-Owners attorney's fees for a 64-day period beginning September 18, 2009 and ending at the conclusion of the second trial.[24]

Auto-Owners also submitted a Bill of Costs as permitted by Rule 54 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920.[25]  The Clerk taxed those costs, and, after Plaintiff Clayton Kearney challenged the Clerk's action, the Court entered an order awarding Auto-Owners costs of $32,477.86.[26]  All of the costs were for expenses incurred in the second phase of this case; Auto-Owners did not seek to recover costs for the first trial on damages or the first phase of the case.

On December 4, 2009, Kearney timely re-filed his motion for attorney's fees and taxable costs as to Counts I and II, which concerned the failure of Auto-Owners to pay the limits of its policies to Kearney.  On August 4, 2010, the Court granted Kearney's request for attorney's fees

---

[22] Doc. 590.

[23] Doc. 596.

[24] Doc. 618.

[25] Doc. 597.

[26] Docs. 608, 610, 616.

under Florida Statutes §§ 627.428 and 627.727, which provide that an insured who prevails in a coverage dispute with his insurance company must receive attorney's fees if the insurance company wrongly forced him to resort to litigation to obtain coverage.[27]  However, the Court did not rule on Kearney's request for taxable costs as to Counts I and II.  The Court considers that request now.

## ANALYSIS

Federal Rule of Civil Procedure 54(d)(1) says: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Rule 54 does not say what makes a party the "prevailing party."  But in general, a "prevailing party for purposes of Rule 54(d), is a party in whose favor judgment is rendered . . . this means the party who won at [the] trial level, whether or not that party prevailed on all issues, and regardless of the amount of damages awarded."[28]  "A party need not prevail on all issues in order to qualify as a prevailing party and receive costs under Rule 54. . . . A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims."[29]  In fact, "even preliminary relief may serve to make a plaintiff a 'prevailing party' under the statute; the lawsuit need not proceed to completion.  All that is required is that the plaintiff obtain the primary relief sought."[30]

---

[27] Doc. 627.

[28] Walter Int'l Prod., Inc. v. Mercado-Salinas, No. 07-20136-CIV, 08-22070-CIV, 2010 WL 2844786, at *2 (S.D. Fla. May 11, 2010) (internal citations and quotation omitted).

[29] Head v. Medford, 62 F.3d 351, 355 (11th Cir.1995) (quoting United States v. Mitchell, 580 F.2d 789, 793 (5th Cir. 1978)).  See also Lipscher v. LRP Publ'n, Inc., 266 F.3d 1305, 1321 (11th Cir. 2001).

[30] Doe v. Marshall, 622 F.2d 118, 120 (11th Cir. 1980) (awarding costs to "prevailing party" who won preliminary injunction to play football in high school, even though the case became moot once student graduated).

In this case, the Court has already awarded costs to Auto-Owners, who prevailed at trial on the bad faith claim against it. Although Kearney challenged certain items in Auto-Owners' Bill of Costs, Kearney did not dispute that Auto-Owners was, in fact, the "prevailing party" under Rule 54. Instead, Kearney asks the Court to determine that he too is a "prevailing party" on the insurance claim dismissed before the first trial in this case. In essence, Kearney asks the Court to find that there were two "prevailing parties."

Although some courts, including this one, have awarded both the defendant and plaintiff costs where both prevailed on distinct claims, and other courts have denied *both* parties costs where both parties prevailed on off-setting claims, generally the Court only awards costs to one party.[31] Otherwise, every case would be sliced into dozens of parts with parties fighting over who won each piece of a divided pie.

In this case, the Court determines that Auto-Owners is the only prevailing party entitled to costs under Rule 54. The Court bases this determination on several factors. First, Auto-Owners is the only party for whom judgment has been entered. Generally, the Clerk only awards costs after judgment is entered in a party's favor and the party submits a Bill of Costs. Kearney neither moved for entry of judgment on Counts I and II nor obtained a judgment on these counts. Instead, Kearney moved to dismiss the claims with prejudice, except for his claim for attorney's fees and costs. Second, the Court finds that because the bad faith claim predominated over the other issues in this case, Auto-Owners' victory at trial on the bad faith claim makes it the prevailing party of the overall case. The bad faith claim involved the largest amount of money

---

[31] See James v. Wash Depot Holding, Inc., 242 F.R.D. 645, 648-49 n.2 (S.D. Fla. 2007); cf. Sedrati v. Allstate Life Ins. Co., 188 F.R.D. 418, 420 (M.D. Ga. 1995) (denying motion to award both parties costs where the insured prevailed on an coverage dispute and the insurance company prevailed on a bad faith claim).

and guided how the parties litigated the subordinate issues of damages, Kearney's contributory negligence for failure to wear a seat belt, and the legal effect of the stacking provision in the Zurich policy. For purposes of costs, these subordinate issues cannot be "neatly distinguished" from the bad faith claim.[32]

The Court's denial of costs differs from its grant of Kearney's request for attorney's fees because federal law, rather than Florida law, governs the question of costs.[33] Florida law entitled Kearney to attorney's fees on the insurance claim, which required the Court to award both parties attorney's fees for different aspects of the case. Federal law does not require the Court to split the lawsuit in the same way so that both parties obtain costs for different claims. To the extent that federal law allows the Court to award both parties costs, the Court for the reasons already stated declines to exercise any discretion to do so.

## CONCLUSION

Plaintiff Clayton Kearney's motion for taxable costs (Doc. 598) is **DENIED**.

**IT IS SO ORDERED**.

*Done on August 16, 2010.*

SUSAN C. BUCKLEW
United States District Judge

---

[32] Sedrati, 188 F.R.D. at 420.

[33] Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).